**ARROW AIRWAYS, INC., Batch-Air, Inc., Conner Aircraft, Inc., Conner Airlines, Inc., F.A. Conner, and Southern Air Transport, Inc., Plaintiffs-Appellants,**

v.

**DADE COUNTY, a political subdivision of the State of Florida, Defendant-Appellee.**

**No. 83–5788.**

United States Court of Appeals, Eleventh Circuit.

Jan. 8, 1985.

Linton R. Lovett, Miami, Fla., for Conners.

Myron Budnick, Miami, Fla., for Batch-Air and Arrow.

Ralph Rocheteau, Asst. County Atty. Aviation Div., Miami, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, HILL, Circuit Judge, and PECK *, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

Appellants, a group of airport tenants comprised of fixed base operators, aircraft dealers, carriers, charter operators and airlines, filed suit in June, 1983 alleging that the rents, fees and charges at Miami International Airport were excessive to the point that they unreasonably burdened interstate commerce and violated 49 U.S.C. § 2210(a)(1), (9) and (12). Appellee Dade County owns and operates Miami International Airport. In April, 1983, the Dade County Commission approved a proposed schedule of rental charges and fees for airport tenants and authorized the Dade County Aviation Department to place the schedule into effect. Appellants then sought an injunction requiring the Aviation Department to reduce its charges by 31.5 percent. Appellants asserted that such a reduction would still allow the Department to meet all of its needs, including necessary reserves and debt service requirements. The district court tried the action without a jury and entered judgment for Dade County. For the reasons set forth below, we affirm.

## I

■ The Miami International Airport participates in federal aid programs and projects under 49 U.S.C. §§ 2201 et seq., the Airport and Airway Development Act of 1982. Appellants maintain that by virtue of this participation, Dade County is subject to the provisions of 49 U.S.C. § 2210(a)(1).[1] Section 2210(a)(1) provides in relevant part:

Sponsorship. As a condition precedent to approval of an airway development

---

* Honorable John W. Peck, U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

1. In the proceedings before the district court, Appellants argued application of 49 U.S.C.

§ 2210(a)(1), (9) and (12). On appeal, however, Appellants rely only upon § 2210(a)(1).

project contained in a project grant application submitted under this title, the Secretary shall receive assurances, in writing, satisfactory to the Secretary, that—
(1) the airport to which the project relates will be available for public use on fair and reasonable terms and without unjust discrimination ....

Appellants argue that the rate structure imposed at the Miami International Airport is oppressive, unfair and unreasonable to the public in violation of § 2210(a)(1). The district court found that there was no private cause of action under § 2210; rather, enforcement authority is reposed in the Secretary of Transportation.[2] The district court relied upon *Hill Aircraft and Leasing Corporation v. Fulton County*, 561 F.Supp. 667 (N.D.Ga.1982), in which the plaintiff, a fixed-based operator at the Fulton County Airport, asserted a claim under 49 U.S.C. § 1718 of the Airport and Airway Development Act of 1970. The 1970 Act was superseded by the Airport and Airway Improvement Act of 1982; Section 1718 of the prior act is substantially similar to § 2210 of the 1982 Act. The district court in *Hill* concluded that there was no private right of action based on § 1718. Subsequent to the trial of the present action, this court affirmed without opinion the decision of the district court in *Hill*. 729 F.2d 1467 (11th Cir.1984). In reaching its decision, the district court in *Hill* analyzed the legislative history of § 1718, which is an amendment to the Airport and Airway Development Act of 1970. The district court also reviewed the history of the 1970 Act in reaching its decision that no private cause of action was implied.

·In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), the United States Supreme Court set forth four factors to be considered in determining whether a federal statute creates an implied private right of action.[3] The district court in *Hill* applied these factors in its analysis of § 1718. The court found that the fourth factor was in the plaintiff's favor because regulation of airports is a federal matter, but found that the other factors militated against the plaintiff. As the court in *Hill* noted, the Supreme Court has indicated in cases subsequent to *Cort* that congressional intent is the primary focus of the inquiry. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146, (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). *See also, Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.1980); *cert. denied* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). The district court in *Hill* found that the legislative history of the statute did not evidence an intent to create a private right to sue an airport sponsor for breach of § 1718. Nothing in the legislative history of the subsequent Airport and Airway Development Act of 1982 indicates an intent to create a private right of action.[4] Based upon the analysis in *Hill* and the lack of any evidence in the 1982 Act of an intent to create a private right of action, we conclude that the district court properly held that Appellants had no express or implied cause of action under 49 U.S.C. § 2210.

## II

■ Appellants assert that the rate structure imposed at the Miami Interna-

---

**2.** 49 U.S.C. § 2210(b) provides in part:

To insure compliance with this section, the Secretary shall prescribe such project sponsorship requirements, consistent with the terms of this title, as the Secretary considers necessary.

**3.** First, is the plaintiff "one of the class for whose *especial* benefit this statute was enacted," [citation omitted]—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or deny one? [Citation

omitted]. Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Citation omitted]. And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations omitted].
*Hill*, 561 F.Supp. at 671.

**4.** 1982 U.S.Code Cong. & Ad.News 781, 1156–1190; 7 U.S.Code Cong. & Ad.News Supp. 682–717 (Sept.1982).

tional Airport constitutes an impermissible burden on interstate commerce in violation of article I, section 8, clause 17 of the United States Constitution. They do not allege any discrimination among fixed base operators or among aircraft carriers, nor do they contend that the rates charged discriminate against out-of-state residents. Appellants rely upon *Evansville-Vanderburgh Airport Authority District v. Delta Airlines, Inc.*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972), in which the Supreme Court found that the plaintiff airlines had not shown that the head tax in question was excessive in relation to the costs incurred by the taxing authorities, and thus the fees constituted no burden on interstate commerce. Appellants submit that, unlike the plaintiffs in *Evansville-Vanderburgh*, they established at trial that the fees charged were excessive in relation to the costs incurred by Dade County.

At trial, Appellants maintained that in 1982 the Dade County Aviation Department charged over $102.4 million for its facilities and services and realized a net income of over $40.36 million after payment of its operating expenses, depreciation, and debt service obligations. Appellants further contended that the Aviation Department's net income increased 632%, from $5.5 million in 1977 to $40.36 million in 1982. They also maintained that Dade County utilized $10.5 million for non-aviation purposes such as advertising, police and fire protection. At issue was the effect of a 1954 trust agreement between Dade County and Chase Manhattan Bank of New York, pursuant to which the Miami International Airport and other properties were purchased, constructed or improved

through bond proceeds. Dade County offered expert testimony that interest on bond construction accounts and bond redemption accounts, amounting to $31.1 million, could not be used to meet operational expenses of the Miami International Airport without violating the 1954 trust agreement. On the other hand, Appellants' expert witnesses testified that such interest could be applied to operational expenses. Dade County also presented evidence that the rent for Aviation Department property was only 75 to 80 percent of the market-level rents for similar property in the areas surrounding the airport.

The district court, in rejecting the Appellants' contention that the rents and fees charged by Dade County were an unreasonable burden on interstate commerce, made the following findings of fact:

1. The County Commissioners of Dade County, Florida acted reasonably in fixing the subject rents at MIA [Miami International Airport].

2. The rents charged at MIA are below comparable level rents.

3. The defendant county has not utilized aviation funds for non-aviation purposes.[5]

We are bound by the clearly erroneous standard of Fed.R.Civ.P. 52(a) in reviewing the factual findings of the district court.[6] *Inwood Laboratories v. Ives Laboratories*, 456 U.S. 844, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982); *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *United States v. Koziy*, 728 F.2d 1314 (11th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 130, 83 L.Ed.2d 70 (1984). The purpose of Rule 52(a) is twofold: "(1) to engender care on the part of

5. The district court made the above findings in a memorandum opinion of September 16, 1983. On October 21, 1983, the district court amended the memorandum opinion to:
    a) describe plaintiffs as a group comprised of fixed base operators, aircraft dealers, purchasers, sellers, lessors, lessees, charter operators and certified airlines.
    b) indicate that plaintiffs also allege that the fees charged by the defendants are unfair and unreasonable.

c) to find that plaintiffs have shown no violation of 49 U.S.C. §§ 2210(a)(1), 2210(a)(9), and 2210(a)(12).

6. Federal Rule of Civil Procedure 52(a) provides in part that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and state separately its conclusions of law thereon .... Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

the trial judge in ascertaining the facts and (2) to make possible meaningful review in the appellate courts." *Gupta v. East Texas State University,* 654 F.2d 411, 415 (5th Cir.1981). Here, although the findings of fact are rather abbreviated, they are sufficient to effectuate the purposes behind Rule 52.

The district court heard testimony from three witnesses that interest on bond construction and bond redemption accounts could not be used to meet operational expenses of the airport without violating the 1954 trust agreement. The district court also heard evidence that the $10.5 million allegedly used for non-aviation purposes was payment for specific services such as staffing and operating of police and fire substations located on the airport grounds. Further, Dade County presented evidence that the rent for Aviation Department property was only 75 to 80 percent of the market level rents for similar property in the areas surrounding the Miami International Airport. Although the Appellants presented evidence to the contrary, there is substantial evidence in the record to support the factual findings of the district court. After reviewing the record, we conclude that the district court did not clearly err in making its findings of fact.

AFFIRMED.

Clark, Circuit Judge, dissented and filed opinion.