Robert WALZ, Lana Sue Walz, and Robert Walz, Jr., Plaintiffs–Appellees,

v.

TOWN OF SMITHTOWN and James Dowling, personally and as Superintendent of Highways of the Town of Smithtown, Defendants–Appellants,

Suffolk County Water Authority, Defendant.

No. 1996, Docket 94–7268.

United States Court of Appeals, Second Circuit.

Argued Aug. 8, 1994.

Decided Jan. 24, 1995.

L. Kevin Sheridan, Smithtown, NY (Thomas J. Spellman, Jr., Devitt & Spellman, Smithtown, NY, of counsel), for defendants-appellants.

William D. Wexler, North Babylon, NY (Kevin Snover, of counsel), for plaintiffs-appellees.

Before: WINTER and LEVAL, Circuit Judges, and SKRETNY,* District Judge.

WINTER, Circuit Judge:

The Town of Smithtown ("Smithtown") and James Dowling, the town's Superintendent of Highways, appeal from an adverse jury verdict awarding damages for violating the substantive due process rights of Robert Walz, Lana Sue Walz, and Robert Walz, Jr. (the "Walzes"). The Walzes were denied access to public water supply when Dowling refused to issue a permit allowing the county water authority to excavate a public street in order to connect the Walzes' home to the public water system. Dowling's refusal was intended to coerce the Walzes to convey some of their land to Smithtown. We affirm.

## BACKGROUND

The Walzes own a home on a parcel of land on Ketcham Avenue in Smithtown, New York. For approximately twenty-six years, water was supplied by a well on the property. In late December 1991, the Walzes experienced problems with the well, which was shut down on New Year's Day, 1992.

On January 9, 1992, the Walzes applied to the Suffolk County Water Authority for public water service. As instructed by the Au-

---

thority, they dug a trench on their property for the water line, which was approved by the Water Authority on January 16. That day, the Walzes paid the Water Authority the $1,100 required fee. However, an excavation permit from Smithtown was required in order to excavate Ketcham Avenue, which was a public street.

When processing emergency applications for water service, the Water Authority typically obtains an excavation permit on behalf of the applicant by telephoning for verbal authorization. On January 16, a person in the Water Authority made such a call to the Highway Department to obtain a permit. A clerk at the Highway Department gave verbal authorization. She then typed a permit that stated: "EMERGENCY Water Service—verbal approval 1/16/92." On the morning of January 17, Dowling signed the permit. Later that morning, Dowling instructed the clerk to void the permit. After doing so, the clerk informed the Water Authority that the permit was now void. The person with whom the clerk spoke at the Water Authority asked whether Dowling was aware that the Walzes had been "without water and heat since before the holidays." The clerk stated that Dowling was aware of this fact. Dowling also telephoned a District Manager for the Water Authority to inform him that the permit had been cancelled.

Dowling then telephoned Mrs. Walz and asked her whether the Walzes would deed the front fifteen feet of their property to Smithtown for road widening purposes. During the conversation, Dowling told her that the Walzes would not receive water supply service until the fifteen foot wide strip of land was conveyed to Smithtown. Mr. Walz went to the Water Authority, but it was unable to provide any help.

Shortly after Mr. Walz returned home from the Water Authority, a Highway Department employee arrived at the Walzes' home with a draft deed by which the Walzes would convey the front fifteen feet of their property to Smithtown. The Walzes confronted Dowling at the offices of the Highway Department and told him that they would not give up their land to obtain water supply service.

The next day, January 18, Dowling left for a four-week vacation, during which he made no inquiry regarding the status of the Walzes' permit application. Upon returning from vacation, Dowling contacted the Smithtown Town Attorney for help in obtaining the strip of property from the Walzes. In a letter to the Town Attorney, Dowling wrote that he wanted to improve Ketcham Avenue—which in front of the Walz property was unpaved, and too narrow—but that the residents of Ketcham Avenue were uncooperative.

On March 3, the Walzes commenced an Article 78 proceeding in the New York Supreme Court seeking an order compelling Dowling to issue a permit to the Water Authority and compelling the Water Authority to connect the Walzes' home to the public water supply. The defendants argued that the proceeding was moot in light of an excavation permit issued on March 6. However, this excavation permit included special requirements that a concrete curb be installed along the edge of the roadway, that a jacking fee of $900 be paid to dig beneath the road, and that a fee of $1,100 be paid for patching the road. The permit also required the posting of a $3,678 cash bond. The typical excavation permit contains no such conditions.

On March 27, Justice William L. Underwood ruled that the curbing requirement was unreasonable and ordered Dowling to issue a permit consistent with his opinion. On April 6, a new permit was issued which was identical to the March 6 permit but for the omission of the curbing requirement and a corresponding reduction in the cash bond requirement. The Walzes, believing that the April 6 permit was inconsistent with Justice Underwood's order, filed a motion to hold Dowling in contempt. The motion was returnable on April 27, but on April 24, Dowling issued a permit at the standard fee of $35 and the Walzes' were connected to the public water supply on April 28.

The Walzes subsequently brought the present Section 1983 action for damages on the ground that Dowling's conduct violated the substantive component of the Due Process Clause of the Fourteenth Amendment.

In answer to a series of special interrogato-ries, set out in pertinent part in the margin,[1]

1. The interrogatories relating to the Town and Dowling, and the answers given by the jury, were:

*January 17, 1992 Permit*

1. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling knew on January 17, 1992 that the plaintiffs did not have their own water supply?

YES _X_ NO ___

If your answer to question 1 is "NO," please answer question 4.

If your answer to question 1 is "YES," please answer question 2.

2. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling voided the January 17, 1992 permit, that would have allowed the Suffolk County Water Authority to open Ketcham Avenue for the purpose of connecting the Walz property to the water main, to intentionally deprive the plaintiffs of a water supply on their property?

YES _X_ NO ___

If your answer to question 2 is "NO," please answer question 4.

If your answer to question 2 is "YES," please answer question 3.

3. Did the plaintiffs prove, by a preponderance of the evidence that the defendant James Dowling voided the January 17, 1992 permit because of an improper motive, namely to compel the plaintiff Robert Walz to deed a portion of his property to the Town of Smithtown?

YES _X_ NO ___

If your answer to question 3 is "NO," you have found a verdict in favor of the defendants James Dowling and the Town of Smithtown for the period from January 17, 1992 to March 6, 1992.

If your answer to question 3 is "YES," you have found a verdict in favor of the plaintiffs and against the defendants James Dowling and the Town of Smithtown for the time period from January 17, 1992 to March 6, 1992.

In either case, please answer question 4.

*March 6, 1992 Permit*

4. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling knew on March 6, 1992 that the plaintiffs did not have their own water supply?

YES _X_ NO ___

If your answer to question 4 is "NO," please answer question 8.

If your answer to question 4 is "YES," please answer question 5.

5. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling knew that the conditions placed on the March 6, 1992 permit were improper and unreasonable?

YES _X_ NO ___

If your answer to question 5 is "NO," please answer question 8.

If your answer to question 5 is "YES," please answer question 6.

6. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling placed the conditions on the March 6, 1992 permit to intentionally prevent the Suffolk County Water Authority from connecting the Walz property to the water main?

YES _X_ NO ___

If your answer to question 6 is "NO," please answer question 8.

If your answer to question 6 is "YES," please answer question 7.

7. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling placed the conditions on the March 6, 1992 permit because of an improper motive, namely, to compel the plaintiff Robert Walz to deed a portion of his property to the Town of Smithtown?

YES _X_ NO ___

If your answer to question 7 is "NO," you have found a verdict in favor of the defendants James Dowling and the Town of Smithtown for the time period from March 6, 1992 to April 6, 1992.

If your answer to question 7 is "YES," you have found a verdict in favor of the plaintiffs and against the defendants James Dowling and the Town of Smithtown for the time period from March 6, 1992 to April 6, 1992.

In either case, please answer question 8.

*April 6, 1992 Permit*

8. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling knew on April 6, 1992 that the plaintiffs did not have their own water supply?

YES _X_ NO ___

If your answer to question 8 is "NO," please answer question 12.

If your answer to question 8 is "YES," please answer question 9.

9. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling knew that the conditions placed on the April 6, 1992 permit were improper and unreasonable?

YES _X_ NO ___

If your answer to question 9 is "NO," please answer question 12.

If your answer to question 9 is "YES," please answer question 10.

10. Did the plaintiffs prove, by a preponderance of the evidence, that the defendant James Dowling placed the conditions on the April 6, 1992 permit to intentionally prevent the Suffolk County Water Authority from connecting the Walz property to the water main?

YES _X_ NO ___

If your answer to question 10 is "NO," please answer question 12.

If your answer to question 10 is "YES," please answer question 11.

11. Did the plaintiff's prove, by a preponderance of the evidence, that the defendant James Dowling placed the conditions on the April 6,

the jury found that Dowling was aware on January 17, 1992, that the Walzes were without water and that Dowling's reason for voiding the excavation permit was to deprive the plaintiffs of water. The jury further found that Dowling had an improper motive for voiding the permit, refusing to issue another permit, and attaching unreasonable conditions to the permits of March 6 and April 6. This motive was to compel Robert Walz to deed a portion of his property to Smithtown. The jury awarded a total of $102,000 in compensatory damages against Smithtown and Dowling and $9,500 in punitive damages against Dowling. The district court then awarded $48,276 in attorney's fees.

## DISCUSSION

On appeal, Smithtown and Dowling[2] contend that: (i) the Walzes have no constitutionally protected property interest at stake; (ii) any such property interest would be subject only to procedural, rather than substantive, due process protection; (iii) Dowling is protected by qualified immunity; (iv) the district court erred by allowing the jury to award compensatory damages based upon emotional distress and pain and suffering and the jury award is excessive; and (v) the district court erred in calculating attorney's fees.

A. *The Existence of a Protected Property Right*

The district court held that there is a fundamental right to water supply protected by the Due Process Clause. This is a novel ruling. We may take judicial notice of the fact that a multitude of local governments do not supply water to their residents, and there is no authority suggesting that these governmental units are in violation of the Constitution. To be sure, a denial of water supply to one resident while providing it to others in similar circumstances, or, as here, an exacting in the case of one applicant of onerous and extortionate conditions that were unrelated to the merits of the application, might give rise to an Equal Protection claim, *see Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (Equal Protection clause "is essentially a direction that all persons similarly situated should be treated alike."), but no such claim was pleaded in this action.

■ However, we need not address this issue. Whether the Walzes had a property right was resolved as a matter of law, and the special interrogatories submitted to the jury focused upon Dowling's conduct in voiding the original excavation permit and refusing later to issue an unconditional permit.[3] See Note 1, *supra*. If the Walzes had, as a matter of law, a property interest in the issuance of an excavation permit, the district court's reliance upon a supposed property right in water supply would not affect the jury's verdict, although the deprivation of water supply would be relevant to damages. Because we believe that the Walzes had a property right in an excavation permit, we need not reach the issue of a right to water supply.

■ When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis, which has its origins in the Supreme Court's

1992 permit because of an improper motive, namely, to compel the plaintiff Robert Walz to deed a portion of his property to the Town of Smithtown?
YES _X_ NO ___
If your answer to question 11 is "NO," you have found a verdict in favor of the defendants James Dowling and the Town of Smithtown for the time period from April 6, 1992 to April 28, 1992.
If your answer to question 11 is "YES," you have found a verdict in favor of the plaintiffs and against the defendants James Dowling and the Town of Smithtown for the time period from April 6, 1992 to April 28, 1992.

2. Appellants have not raised the issue of whether the municipality of Smithtown can, on these facts, be held liable under Section 1983 but have in effect conceded that if Dowling is liable, then Smithtown is also.

3. Although the Suffolk County Water Authority was the applicant for purposes of the Smithtown Code, the Walzes were, under New York law, the party-in-interest with regard to the application, as reflected in their standing to bring an Article 78 proceeding to enforce that Code. Therefore, the Walzes are entitled to bring a claim for damages stemming from the failure by Dowling to issue the permit to the Water Authority.

decision in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The focus of this analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body. *See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property interest in building permit); *cert. denied*, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Sullivan v. Town of Salem*, 805 F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in certificate of occupancy); *Yale Auto Parts v. Johnson*, 758 F.2d 54, 58–60 (2d Cir.1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard).

■ In *Yale Auto Parts*, 758 F.2d at 59, we stated that a "legitimate claim of entitlement" exists where, "absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." This test focuses on the amount of discretion committed to the issuing authority, not the estimated probability that the authority would act favorably in a particular case. *See RRI Realty*, 870 F.2d at 918. As we observed in *RRI Realty*, "[t]he 'strong likelihood' aspect of *Yale Auto Parts* comes into play only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured; an entitlement does not arise simply because it is likely that broad discretion will be favorably exercised." *Id.* Put another way, "[t]he fact that the permit could have been denied on non-arbitrary grounds defeats the federal due process claim." *Id.*

The standards governing the granting of permits for street excavations is set forth in Article IV of Chapter 245 of the Smithtown Code. Section 245–16 provides, in relevant part:

A. Applications, in writing, shall be filed with the Superintendent of Highways upon application blanks which he shall provide or in such other manner as he shall pre-scribe, which applications shall state the nature, location, extent and purpose of the proposed excavations.

B. Applications by public service companies, excluding municipal districts, must be accompanied by a general undertaking in such form as may be approved by the Town Board. Said general undertaking is tendered to assure that, after completing the excavation, said applicant leaves the street, highway or sidewalk, pavement, curb or gutter in the same condition it was prior to excavation.

\* \* \* \* \* \*

D. Upon compliance with the foregoing requirements, a permit shall be issued in the name of the Superintendent of Highways of the Town of Smithtown.

We believe the discretion of the Superintendent of Highways to deny an excavation permit is so circumscribed that the Walzes possessed an entitlement to a permit. So long as an application form states "the nature, location, extent and purpose of the proposed excavations," the Superintendent of Highways has no discretion to decline to issue a permit. The Smithtown Code thus states, "a permit shall be issued." The only apparent ground for declining an excavation permit to a public utility is that the application did not provide all the designated information. Under such circumstances, the denial is not an exercise of discretion but the result of the fact that the applicant has not fulfilled the express requirements of the Code. In sum, no discretion existed for Dowling to void the permit, or to refuse to issue another permit. We therefore conclude that the Walzes had a property right in receiving an excavation permit from Dowling.

## B. *Substantive Due Process and Property Rights*

■ We turn now to the question of whether property rights in governmental permits are subject to substantive, as well as procedural, due process. The Walzes make no claim that New York fails to provide procedural safeguards for their right to an excavation permit. Indeed, they availed themselves of those safeguards by bringing

an Article 78 proceeding. Rather, they claim that they have a substantive due process right not to be subject to an arbitrary and capricious denial of an excavation permit. Appellants argue that the Walzes' sole due process rights lie in the guaranty of procedural safeguards.

■ Although not yet addressed by the Supreme Court, see Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 222–23, 106 S.Ct. 507, 511–12, 88 L.Ed.2d 523 (1985), the issue of whether substantive due process protects state-created property rights is resolved by precedents in this circuit that must be followed by a panel of this court. In Brady v. Town of Colchester, 863 F.2d 205 (2d Cir.1988), we expressly recognized with regard to the rights of landowners the distinction between procedural due process and substantive due process. We held that the landowner in question in that case was accorded adequate procedural safeguards, id. at 211, but that a remand was necessary to determine whether a local zoning board denied a permit because of arbitrary or irrational reasons, id. at 216. The remand was thus based on substantive due process. Id. at 211–16. There is some suggestion in RRI Realty that Brady and our earlier decision in Sullivan might be more properly based on "the owner's indisputable property interest in the land" rather than on a Roth analysis. See RRI Realty, 870 F.2d at 917. Nevertheless, Brady employed Roth in remanding, and, even if what is at stake is the Walzes' property interest in their land, that analysis would not, given the jury's answers to the special interrogatories, see Note 1 supra, alter the outcome in the instant matter. As landowners, the Walzes surely had a right not to be compelled to convey some of their land in order to obtain utility service. See Dolan v. City of Tigard, —— U.S. ——, ——, 114 S.Ct. 2309, 2317, 129 L.Ed.2d 304 (1994) (absence of nexus between permit condition and legitimate state interest converts valid land regulation into an "out-and-out plan of extortion").

## C. Qualified Immunity

■ Appellants challenge also the district court's ruling that Dowling was not entitled to qualified immunity. The argument is entirely without merit.

■ Qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions." Ying Jing Gan v. City of New York, 996 F.2d 522, 531 (2d Cir.1993). However, by conditioning the issuance of a permit on the conveyance of land, Dowling was not exercising a discretionary function but simply refusing to perform a ministerial act until a demand with absolutely no basis in legal authority was met.

Qualified immunity exists " 'to protect officials who are required to exercise their discretion' " and to encourage " 'the vigorous exercise of official authority.' " Harlow v. Fitzgerald, 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982) (quoting Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978)). Regardless of any doubts as to whether his conduct violated due process, Dowling could not have believed, as a matter of equal protection or simply of the laws of the town, that he had discretion to deny an excavation permit to the Walzes as a means of extorting land from them. Indeed, appellants offer no authority whatsoever that might have led Dowling to believe otherwise. He is, therefore, as a matter of law not entitled to qualified immunity. See Harlow, 457 U.S. at 816, 102 S.Ct. at 2737 (observing that qualified immunity is unavailable for ministerial tasks); Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991) (holding that qualified immunity doctrine applies where government official performs discretionary function, as distinct from ministerial function); see also Davis v. Scherer, 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 3020 n. 14, 82 L.Ed.2d 139 (1984) (discussing ministerial duty exception to qualified immunity).

## D. Damages

■ Appellants next contend that the district court erred by allowing the jury to award compensatory damages based upon emotional distress and pain and suffering. However, "[i]t is settled that a court may award damages for emotional suffering in a § 1983 case." See Miner v. City of Glens

*Falls,* 999 F.2d 655, 662 (2d Cir.1993); *see also Ragin v. Harry Macklowe Real Estate Co.,* 6 F.3d 898, 907 (2d Cir.1993) ("It is axiomatic that civil rights plaintiffs may recover compensatory damages for emotional distress."). The Walzes presented evidence of emotional distress to the jury. Mrs. Walz testified that she was "shocked" by her telephone conversation with Dowling on January 17, 1992. Mr. Walz testified that he became so upset when he found out about Dowling's threat that he started shaking. The jury was entitled to credit this testimony. *See Miner,* 999 F.2d at 662–63 (upholding jury award for emotional distress based upon testimony of plaintiff and his spouse). Furthermore, the jury was entitled to award damages for the Walzes' distress and discomfort at being without water for a protracted period.

■ Appellants further contend that the jury awards are excessive. However, "[i]t is well settled that calculation of damages is the province of the jury." *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir.1990). "[T]he standard of appellate review of damage awards, whether compensatory or punitive, is whether the award is so high as to shock the judicial conscience and constitute a denial of justice." *Id.* (citations omitted). The jury awarded compensatory damages in the amount of $40,800 to Robert Walz, $40,800 to Lana Sue Walz, and $20,400 to Robert Walz, Jr. We do not find these amounts to be excessive. We have upheld larger awards for mental distress stemming from a constitutional tort, *see id.* at 187, and these awards include compensation for the inconvenience and hardship suffered by the Walzes because their home lacked running water. Nor do we find the punitive damage award of $9,500 to be excessive. *See id.* (upholding $150,000 punitive damage award).

E. *Attorney's Fees*

■ Finally, appellants challenge the award of attorney's fees pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988. We review the district court's award for abuse of discretion, *see Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983), bearing in mind the high degree of deference owed to the district court, *see Mautner v. Hirsch,* 32 F.3d 37, 39 (2d Cir.1994).

■ We believe that the fee award of $48,276 was reasonable, both in terms of the hourly rate and the number of hours expended on the litigation. Moreover, the application in support of the fee request contained adequate documentation. We note that the district court properly excluded compensation for work performed in connection with litigating against the defendant Water Authority, which the jury found not liable.

■ Appellants contend that the district court's failure to hold an evidentiary hearing before making a fee award of this magnitude violated their right to due process. However, awards of comparable size are routinely made without an evidentiary hearing, *cf. Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941 ("A request for attorney's fees should not result in a second major litigation."), and we are informed of nothing that would be developed in such a hearing that would alter the outcome.

Affirmed.