EAST HAMPTON AIRPORT PROPERTY OWNERS ASSOCIATION, INCORPORATED, Plaintiff,

v.

The TOWN BOARD OF THE TOWN OF EAST HAMPTON, Defendant.

No. CV 99–497(ADS).

United States District Court, E.D. New York.

Oct. 29, 1999.

Anthony C. Darienzo, Huntington Station, N.Y., for plaintiff.

Cahn Wishod & Knauer, Melville, N.Y., for defendant; Richard C. Cahn, of counsel.

SPATT, District Judge.

On January 26, 1999 the East Hampton Airport Property Owners Association, Incorporated (the "Association" or the "plaintiff") initiated this action by the filing of a complaint against The Town Board of the Town of East Hampton (the "Town Board" or the "defendant"). The complaint alleges violations of both federal constitutional and statutory rights, and seeks declaratory and injunctive relief against the Town Board in connection with their operation and maintenance of the East Hampton New York Airport (the "Airport").

Presently before the Court are: (1) the Town Board's motion to dismiss the Association's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); and (2) the motion by the Association for a preliminary injunction pursuant to Rule 65 of the Fed. R.Civ.P.

## I. BACKGROUND

Unless otherwise stated, the following factual allegations are taken from the plaintiff's complaint. The Association is an organization of pilots, aircraft owners and property owners at the East Hampton Airport, located in East Hampton, New York. Some members of the Association lease land from the Town Board at the Airport, have constructed hangars and other facilities on the leased property and use the Airport for aviation related activity.

The plaintiff alleges that the Airport is a public use facility and is certified by the Federal Aviation Administration (the "FAA"). The plaintiff further contends that under 49 U.S.C. § 47102 *et seq.*, the Town Board is "bound by the sponsor's assurances contained in 49 U.S.C. § 47107," also known as the Airport and Airway Improvement Act of 1982 ("AAIA"). Sponsor's assurances are made by recipients of federal grants as a condition precedent to receipt of that aid. These assurances require that airports receiving federal funding comply with certain rules.

The complaint alleges three separate causes of action. The first cause of action contends that until early last year, a committee of citizens and airport users advised the Town Board with regard to the use and operation of the Airport. Some members of the Association served on that committee. In March, 1998, the Town Board abolished the committee. This resulted in the Town Board making decisions concerning the Airport by a majority vote and without the Association's consent. Due to the fact that members of the Association have made substantial financial investments at the Airport and that the Town Board is now making decisions affecting those investments without the Association's input or consent, the plaintiff

argues that its due process and equal protection rights under the Fourteenth Amendment to the United States Constitution have been violated.

The second cause of action asserts that for many years, the Town Board has accepted federal grants in aid for airport improvement and maintenance under the provisions of 49 U.S.C. § 47105 *et seq.* As a result, the Town Board was required to make certain assurances, also known as "sponsor's assurances," under 49 U.S.C. § 47107. The plaintiff claims that the Town Board has violated these assurances in its management and operation of the airport causing the Association members and others to be at increased risk in their aviation operations at the airport. The plaintiff alleges that the Town Board has allowed certain Airport facilities to deteriorate and has not planned for the future of the airport. In addition, the plaintiff contends that the Town Board has failed to modernize the airport with the latest weather and navigation equipment thereby discouraging its use. As a result, the plaintiff argues that the Town Board's actions have had a chilling affect on potential users of the airport and have diminished the value of the property held by the members of the Association. Accordingly, the plaintiff contends that the Town Board has violated numerous provisions of 49 U.S.C. § 47107.

In particular, the plaintiff alleges that the Town Board has violated: (1) 49 U.S.C. § 47107(a)(1) which requires that a sponsor make the airport available for public use on reasonable conditions without unjust discrimination; (2) 49 U.S.C. § 47107(a)(7) which requires the sponsor to maintain the airport suitably, with consideration given to climatic and flood conditions; (3) 49 U.S.C. § 47107(a)(9) which requires a sponsor to take appropriate action to ensure that terminal airspace required to protect instrument and visual operations to the airport be cleared and protected by mitigating existing and preventing future airport hazards; (4) 49 U.S.C. § 47107(a)(10) which requires sponsors to take appropriate action to restrict the use of land at or near the airport to uses that are compatible with normal operations; (5) 49 U.S.C. § 47107(a)(13) which requires a sponsor to maintain a schedule of charges for use of the facilities and services at the airport that will make the airport as self-sustaining as possible; and (6) 49 U.S.C. § 47107(a)(18) which requires an airport sponsor to make available to the public a copy of the airport budget.

The plaintiff's third cause of action alleges that the Town Board violated the Supremacy and Commerce Clauses of the Constitution. In particular, the plaintiff argues that the Town Board recently offered changes to the Town Code imposing severe administrative restrictions on proposals concerning the use and operation of the Airport. For example, the Town Board intends to require public hearings prior to any grant application for federal funds for airport maintenance and improvement. The plaintiff submits that this action is designed to forestall any future grant applications. In addition, other proposed changes to the Town Code would impose strict environmental review procedures on all airport projects. As a result, the plaintiff argues that the new procedures are stricter than those required under New York and Federal Law, and thus usurp federal supremacy in the regulation of aviation. In addition, the plaintiff asserts that the Town Board's actions amount to an unfair restraint on interstate commerce since flight operations and potential airport commercial operators will be dissuaded from using the airport.

## II. DISCUSSION

### A. *Rule 12(b)(6)*

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 44 (2d Cir.1997) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957] ); *see also IUE AFL—CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1052 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). The Second Circuit stated that in deciding a Rule 12(b)(6) motion, "a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 [2d Cir.1991] ); *see also International Audiotext Network, Inc. v. AT & T Co.,* 62 F.3d 69, 72 (2d Cir.1995); *Paulemon v. Tobin,* 30 F.3d 307, 308–09 (2d Cir.1994).

It is not the Court's function to weigh the evidence that might be presented at a trial; the Court must merely determine whether the complaint itself is legally sufficient, *see Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985), and in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true, *see Strom v. Goldman, Sachs & Co.,* — F.3d —, —, 1999 WL 639844, *1 (2d Cir. Aug.24, 1999); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Procter & Gamble Co. v. Big Apple Indus. Bldgs., Inc.,* 879 F.2d 10, 14 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), and construe all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996); *LaBounty,* 933 F.2d at 123; *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1098 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f).

The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal under Rule 12(b)(6). *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais,* 532 F.2d 308, 311 [2d Cir.1976] [per curiam] ).

It is within this framework that the Court addresses the motion to dismiss the complaint.

B. *The Equal Protection and Due Process Claims*

Paragraphs 13–18 of the plaintiff's complaint are dedicated to its first cause of action; namely, that the Town Board violated the Association's Due Process and Equal Protection rights. The complaint states:

14. Until early last year, a committee of citizens and airport users advised the defendant Town board in the use and operation of the airport. Some members of plaintiff association served on that committee.

15. Defendant abolished that committee in March, 1998. Decisions concerning the airport are now made by majority vote of the defendant Town Board.

16. Members of plaintiff association have made substantial financial investments at the airport based on lease agreements with the defendant.

17. Decisions are now made by defendant affecting those investments without plaintiff association member's knowledge.

18. Plaintiff association asserts that this violates due process and equal protection rights granted them under the Fourteenth Amendment to the United States Constitution, in that plaintiff's vital property interests are affected by actions of defendant Town board.

While not specified in the complaint, the Court presumes that the basis for the plaintiff's complaint, at least in part, is 42 U.S.C. § 1983.

### 1. Equal Protection

■ To state a valid cause of action under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that: (1) compared with others similarly situated, the plaintiff was selectively treated; and (2) such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *Crowley v. Courville*, 76 F.3d 47, 52–53 (2d Cir.1996) (citations omitted); *accord Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir.1995); *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir.1992). Recent Second Circuit decisions have been careful to apply each prong of the test separately, finding the failure to satisfy either inquiry fatal to the plaintiff's claim. *See, e.g., Zahra*, 48 F.3d at 684 (recognizing that even where the plaintiff presents evidence of selective treatment, failure to demonstrate malice or bad faith requires dismissal of the claim).

■ Even accepting the facts as alleged in the plaintiff's complaint as true, as the Court must on this motion, the plaintiff's complaint fails to allege in any manner that the Association was selectively treated compared to others similarly situated. In addition, even if the Court were to find that the complaint somehow alleged that the Association was selectively treated, it does not allege that such selective treatment was based on impermissible considerations such as "race or religion, intent to inhibit or punish the exercise of constitutional rights or a malicious or bad faith intent to injure." *Muller Tours, Inc. v. Vanderhoef*, 13 F.Supp.2d 501, 508 (S.D.N.Y.1998) (citing *Crowley*, 76 F.3d at 52). The plaintiff fails to cite any authority in support of its contention that its equal protection right was violated. Accordingly, the plaintiff's Equal Protection claim must be dismissed.

### 2. Due Process

■ "Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.' " *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 537 [2d Cir.1994] ).

■ In one of the few successful substantive due process cases, one tried before this Court, the Second Circuit stated in *Walz v. Town of Smithtown*, 46 F.3d 162 (2d Cir.), *cert. denied*, 515 U.S. 1131, 115 S.Ct. 2557, 132 L.Ed.2d 810 (1995) that:

> When an unsuccessful applicant for a governmental permit claims that an official or regulatory body has violated due process, the framework for evaluating the claim is the well-developed property interest analysis, which has its origins in the Supreme Court's decision in *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The focus of this analysis is on the nature of the applicant's interest in the approval being sought, specifically whether the applicant has a clear entitlement to the approval sought from the government official or administrative body. *See, e.g., RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911 (2d Cir.) (analyzing whether applicant possessed property interest in building permit), *cert. denied*, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989); *Sullivan v. Town of Salem*, 805

F.2d 81, 84–85 (2d Cir.1986) (analyzing whether applicant possessed property interest in a certificate of occupancy); *Yale Auto Parts v. Johnson,* 758 F.2d 54, 58–60 (2d Cir.1985) (analyzing whether applicant possessed property interest in permit to use property as automobile junkyard).

*Walz,* 46 F.3d at 167–68. In *Roth,* the Supreme Court set forth the following test to guide the courts in determining whether such a property interest exists: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.... He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Thus, in order to establish a property interest sufficient to support a substantive due process claim, the plaintiff must establish a " 'legitimate claim of entitlement' to the benefit in question." *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996) (quoting *Zahra v. Town of Southold,* 48 F.3d 674, 680 [2d Cir.1995] [internal citation omitted] ).

■ In addition, "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir.1999).

■ The plaintiff argues that because the Town Board decided to pursue a course of action designed to allow the Airport to fall into disrepair, its members have lost substantial investments in hangar construction and aircraft equipment. The Court is not persuaded by the plaintiff's argument. Even accepting the facts alleged in the complaint as true, the plaintiff has failed to demonstrate that it was deprived of a constitutionally protected property interest without due process of law.

■ While a committee of citizens and airport users previously advised the defendant Town board in the use and operation of the Airport, the Town Board ultimately has the sole right to make decisions concerning the Airport. That they are no longer permitted to confer with the Town Board prior to decisions being made concerning the Airport, does not give rise to a constitutional violation. Under these circumstances, the plaintiff has no property interest sufficient to support a due process violation. In fact, the plaintiff has not identified a constitutionally protected property interest in its complaint; nor has the plaintiff demonstrated how it has been deprived of a property interest without due process of law. When the action of a local government is "truly discretionary under local law, one's interest in a favorable decision does not rise to the level of a property right...." *Weissman v. Fruchtman,* 765 F.Supp. 1185, 1190 (S.D.N.Y. 1991) (quoting *Walentas v. Lipper,* 862 F.2d 414, 419 [2d Cir.1988] ) (other citations omitted). Accordingly, the defendant's motion to dismiss the plaintiff's claim alleging that the Town Board violated its due process right, is granted.

C. *Does a Private Cause of Action Exist Under Section 47107 of the Airport and Airway Improvement Act of 1982*

■ As previously stated, the plaintiff alleges that the Town Board has violated 49 U.S.C. § 47107(a)(1) which requires that a sponsor make the airport available for public use on reasonable conditions without unjust discrimination; 49 U.S.C. § 47107(a)(7) which requires the sponsor to maintain the airport suitably, with consideration given to climatic and flood conditions; 49 U.S.C. § 47107(a)(9) which requires a sponsor to take appropriate action to ensure that terminal airspace required to protect instrument and visual operations to the airport be cleared and protected by mitigating existing and preventing future airport hazards; 49 U.S.C. § 47107(a)(10) which requires sponsors to take appropriate action to restrict the use of land at or near the airport to uses that are compatible with normal operations; 49 U.S.C.

§ 47107(a)(13) which requires a sponsor to maintain a schedule of charges for use of facilities and services at the airport that will make the airport as self-sustaining as possible; and 49 U.S.C. § 47107(a)(18) which requires an airport sponsor to make available to the public a copy of the airport budget.

In determining whether a private right of action is implicit in 49 U.S.C. § 47107, previously codified at 49 U.S.C. app. § 2210, the Court is mindful of the Supreme Court's decision in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). In *Cort*, the Supreme Court held that:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose especial benefit the statute was enacted—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Id.* at 78, 95 S.Ct. 2080. (quotations omitted). Subsequent Supreme Court decisions have focused the *Cort* analysis to "emphasize the centrality of the second factor—Congressional intent; treating the other factors as 'proxies of legislative intent.'" *McClellan v. Cablevision of Connecticut, Inc.*, 149 F.3d 161, 164 (2d Cir. 1998) (quoting *DiLaura v. Power Auth. of N.Y.*, 982 F.2d 73, 77–78 (2d Cir.1992)) (considering whether 47 U.S.C. § 531(e) provided a private cause of action for cable programmers.).

In *Western Air Lines, Inc. v. Port Authority of New York and New Jersey*, 817 F.2d 222 (2d Cir.1987), the Second Circuit stated that "our analysis ... applies equally to a suit claiming an implied right of action to enforce section 2210(a) [re-codified as section 47107(a) ]. Indeed, the district court decision ... which this court affirmed, concluded that section 2210(a) does not provide a private right of action." *Id.* at 225, n. 4; *see also Sound Aircraft Services v. Town of East Hampton*, 192 F.3d 329 (2d Cir.1999) (holding that "[a]lthough [section 47107(a)] mandates that the Secretary of Transportation may approve grants to federally funded airports only upon written assurance that the airport operator will comply with non-discrimination provisions, we have previously held that no private right of action existed under similar provisions.... On remand, we invite the district court to reconsider, in light of the foregoing, its decision that 49 U.S.C. § 47101(a), provides Sound with a federal right that may be the basis for its § 1983 claim.").

Similarly, the United States Court of Appeals for the Eleventh Circuit in *Arrow Airways, Inc. v. Dade County*, 749 F.2d 1489 (11th Cir.1985) held that "[b]ased upon the ... lack of any evidence in the 1982 Act of an intent to create a private right of action, we conclude that the district court properly held that Appellants had no express or implied cause of action under 49 U.S.C. § 2210." *Id.* at 1491; *see also Four T's, Inc. v. Little Rock Municipal Airport Commission*, 108 F.3d 909, 915–16 (8th Cir.1997) (holding that no private right of action exists under any of the provisions of the Airport and Airway Improvement Act); *accord Northwest Airlines, Inc. v. County of Kent*, 955 F.2d 1054, 1058 (6th Cir.1992); *Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9, 15 (1st Cir.1987).

The plaintiff cites *Fitzgerald v. Pan American World Airways, Inc.*, 229 F.2d 499 (2d Cir.1956), a 1956 decision by the Second Circuit, in support of its claim that a private right of action exists under Section 47107(a). The plaintiffs in *Fitzgerald*,

however, brought an action under the Civil Aeronautics Act, 49 U.S.C. § 401 *et seq.*, alleging that Pan American World Airways had willfully and maliciously discriminated against them on the basis of their race. *Id.* at 501. While the Court concluded that a private right of action exists under section 484(b) of the Civil Aeronautics Act, the Second Circuit's 1956 decision in *Fitzgerald* is inapplicable to the case presently before the Court as it involved an entirely different statute and a specific section of the statute that sought to prevent discrimination in the aeronautics industry.

As a result of the clear ruling by the Second Circuit in *Western Air Lines* and *Sound Aircraft, supra,* and in accordance with the First, Sixth, Eighth and Eleventh Circuits, the Court finds that Section 47107 does not give rise to a private right of action. Accordingly, the plaintiff's cause of action asserting claims that the Town Board violated Section 47101 is dismissed.

D. *The Causes of Action Under the Supremacy and Commerce Clauses*

In support of its claim that the Town Board has violated the Supremacy and Commerce clauses in the United States Constitution, the plaintiff asserts that the Town Board has required public hearings prior to any grant application for federal funds for airport maintenance and improvement. The plaintiff claims that this requirement was done in an effort to forestall any future grant applications. In addition, the plaintiff argues that the Town Board has made changes to the Town Code that impose strict environmental review procedures on all airport projects. The plaintiff contends that these new procedures are stricter than those required under New York State and Federal law, and would thus usurp federal supremacy in the regulation of aviation. In addition, the plaintiff charges that the Town Board has violated the Commerce Clause as the Town Board's "actions amount to an unfair restraint on interstate commerce since flight operations and potential airport commercial operators will be dissuaded from using the airport."

1. **The Supremacy Clause**

Article VI of the United States Constitution states that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." The Supreme Court in *Northwest Cent. Pipeline Corp. v. State Corp. Commission of Kansas,* 489 U.S. 493, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989) stated that:

Congress has the power under the Supremacy Clause of Article VI of the Constitution to preempt state law. Determining whether it has exercised this power requires that we examine congressional intent. In the absence of explicit statutory language signaling an intent to preempt, we infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law, or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives.

*Id.* at 509, 109 S.Ct. 1262. (citations omitted). The Second Circuit has stated that "[a] claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity." *Western Air Lines,* 817 F.2d at 225. In essence, therefore, a local regulation may be preempted in one of three ways: (1) where Congress expressly preempts the regulation; (2) where Congress implicitly preempts a local regulation by regulating a certain area in comprehensive fashion; and (3) where a local regulation conflicts with federal law, thus

frustrating the purpose of the federal legislation.

██ After extensive analysis of the AAIA, the District Court in *City of Cleveland Ohio v. City of Brook Park, Ohio*, 893 F.Supp. 742, 752 (N.D.Ohio 1995) concluded that the federal statute does not contain an express preemption of local land use ordinances. In addition, the Court in *City of Cleveland* concluded that preemptive intent was not implicit in the AAIA. In particular, the Court in *City of Cleveland* pointed out that the AAIA "seeks ... to promote environmental protection, noise control, reduction of non-compatible land uses in areas surrounding airports, consistency with the Federal Aviation Act, and the development of a national intermodal transportation system." *Id.* at 749. In addition, and crucial to the determination of whether Congress intended to preempt local regulation in the aviation area, the Court noted that "an additional purpose of the [AAIA] is to foster cooperation with state and local governments." *Id.* In fact, 49 U.S.C. § 47101(g) states that:

> To carry out the policy of subsection (a)(5) of this section, the Secretary of Transportation shall cooperate with State and local officials in developing airport plans and programs that are based on overall transportation needs. The airport plans and programs shall be developed in coordination with other transportation planning and considering comprehensive long-range land use plans and overall social, economic, environmental, system performance, and energy conservation objectives. The process of developing airport plans and programs shall be continuing, cooperative, and comprehensive to the degree appropriate to the complexity of the transportation problems.

49 U.S.C. § 47101(g). (footnote omitted). The statute itself is clear and calls for "cooperation" between the Federal Government and local officials and to consider such objectives as the environment. As such, it cannot be persuasively argued that Congress, in its enactment of the AAIA, intended either explicitly or implicitly to preempt local regulation in this area. In addition, the Court is not persuaded that the adoption by the Town Board of a resolution requiring that all "airport plans or plan updates, whether master, layout or capital improvement" be subject to environmental review under SEQRA, conflicts with the AAIA's purpose of providing federal funding to airport construction projects. Other than the conclusory statement in the plaintiff's complaint that "[r]egulations such as these would usurp federal supremacy in the regulation of aviation," the complaint is silent as to how the passage of an environmental review regulation, pursuant to SEQRA, conflicts with federal law, thus frustrating the purpose of the AAIA. Accordingly, the Court dismisses the plaintiff's charge that the Town Board has violated the Supremacy Clause to the United States Constitution.

### 2. The Commerce Clause

██ Article I, Section 8 of the United States Constitution states that "[t]he Congress shall have power ... to regulate Commerce with foreign nations, and among the several states...." Under the "dormant" commerce clause, limitations are imposed upon states in regulating commerce. "The principal objects of dormant Commerce Clause scrutiny are statutes that discriminate against interstate commerce." *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69, 86–87, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). There are two types of impermissible regulations. First, a regulation which on its face is nondiscriminatory and furthers a legitimate state interest, but incidently burdens interstate commerce. These regulations are considered constitutional unless the burden on interstate trade is clearly excessive in relation to the local benefits. "Where, however, a regulation 'affirmatively' or 'clearly' discriminates against interstate commerce on its face or in practical effect, it violates the Constitution unless the discrimination is demonstrably justified by a valid factor

unrelated to protectionism." *C & A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 401, 114 S.Ct. 1677, 1689, 128 L.Ed.2d 399 (1994); *see also Automated Salvage Transp, Inc. v. Wheelabrator Envtl. Sys.,* 155 F.3d 59, 74 (2d Cir.1998).

The only attempt by the plaintiff to demonstrate that the local regulation at issue would interfere with interstate commerce can be found at paragraph 50 of the complaint which states that "[a]dditionally, defendant's actions amount to an unfair restraint on interstate commerce since flight operations and potential airport commercial operators will be disuaded from using the airport." Significantly, in *National Helicopter Corp. v. City of New York,* 137 F.3d 81 (2d Cir.1998) the Second Circuit recently recognized that "Congress has consciously delegated to state and municipal proprietors the authority to adopt rational regulations" concerning "noise and other environmental concerns." *Id.* at 88–89. (quotation omitted). As such, "any action the [Board] properly conducted pursuant to its powers as a proprietor cannot violate the Commerce Clause." *Id.* at 92. (citation omitted). Due to the fact that the plaintiff has failed to demonstrate any effect or unfair restraint on interstate commerce as a result of the passage of an environmental regulation by the Town Board, and also realizing that the Town Board was acting as a proprietor of the Airport when it enacted the regulation, the Court finds that the Commerce Clause has not been violated as a matter of law. Accordingly, the Court dismisses the charge alleging that the Town Board violated the Commerce Clause.

### III. CONCLUSION

Having reviewed the parties' submissions and afforded them the opportunity to present oral argument, it is hereby

**ORDERED,** that the Town Board's motion to dismiss the East Hampton Airport Property Owners Association's complaint in its entirety is **GRANTED;** and it is further

**ORDERED,** having dismissed the East Hampton Airport Property Owners Association's complaint, its motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65 is **DENIED;** and it is further **ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**