**WESTERN AIR LINES, INC.,**
Plaintiff-Appellant,

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY,**
Defendant-Appellee.

No. 829, Docket 86–7859.

United States Court of Appeals,
Second Circuit.

Argued Feb. 19, 1987.

Decided April 22, 1987.

---

Allyn O. Kreps, Los Angeles, Cal. (Jones, Day, Reavis & Pogue, William T. Drescher, Robert DeBerardine, Robert Layton, Thomas L. Abrams, Jones, Day, Reavis & Pogue, New York City, of counsel), for plaintiff-appellant.

Arthur P. Berg, Atty., The Port Authority of New York and New Jersey, for defendant-appellee.

Before FEINBERG, Chief Judge, TIMBERS and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

Western Air Lines, Inc. (Western) appeals from a judgment of the United States District Court for the Southern District of New York, after a bench trial before John M. Cannella, J., that dismissed its complaint seeking an injunction. 658 F.Supp. 952 (S.D.N.Y.1986). Western argues that a "perimeter rule," promulgated by the Port Authority of New York and New Jersey (the Authority), is preempted by a provision of the Airline Deregulation Act, 49 U.S.C. § 1305(a)(1) and violates the substantive provisions of two other aviation statutes, 49 U.S.C. §§ 1349(a) and 2210(a). Western also appeals from the dismissal of its claims for enforcement of the aviation statutes under 42 U.S.C. § 1983. Substantially for the reasons stated by the district court, we affirm the dismissal of the complaint.

*Background*

The Authority owns and operates LaGuardia, Kennedy International and Newark International Airports. In order to reduce ground congestion at LaGuardia, by far the smallest of the three airports, the Authority uses a perimeter rule. The current rule prohibits, with certain exceptions, non-stop flights to or from LaGuardia in excess of 1500 miles. The Authority believes that business travelers create considerably less airport congestion than vacationers and uses the perimeter rule to encourage the use of LaGuardia by business people, who often make relatively short trips, and the use of Newark and Kennedy for vacation flights.

The Federal Aviation Administration (the FAA) limits flights to and from LaGuardia through the use of "slots," each of which authorizes one landing or takeoff by the holder during a thirty-minute period. Western obtained several slots at LaGuardia as a result of a lottery conducted by the FAA. Western sought to use these slots for three daily non-stop flights in each direction between LaGuardia and Salt Lake City, where Western has a "hub." A hub is an airport used by an airline as the central point of its connecting flights. Airlines use hubs to connect two cities that cannot be served economically by non-stop flights. On the basis of its perimeter rule, however, the Authority refused Western permission to conduct LaGuardia-Salt Lake City operations, since Salt Lake City is more than 1,500 miles from LaGuardia.

In the district court, Western's effort to enjoin the perimeter rule centered on three

federal aviation statutes: 49 U.S.C. § 1305, which limits local authority to regulate airlines' "rates, routes or services;"[1] 49 U.S.C. § 2210(a), which requires an airport proprietor receiving federal funds to make its facilities available on a reasonable and non-discriminatory basis;[2] and 49 U.S.C. § 1349(a), which prohibits such proprietors from granting exclusive access to any airline.[3] Western claimed that there is an implied private right of action under each statute; Western also relied on 42 U.S.C.

§ 1983. Western also claimed that under the Supremacy Clause, the perimeter rule was preempted by section 1305(a)(1).

The district court, relying on our holding in *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91 (2d Cir.), cert. denied, —— U.S. ——, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986), ruled that the statutes relied on by Western do not provide a private right of action. In addition, the court dismissed Western's claims under section 1983 for lack of prosecution. The district court did

1. 49 U.S.C. § 1305 provides in relevant part:
   (a) Preemption
   (1) Except as provided in paragraph (2) of this subsection, no State or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.
       . . . .
   (b) Proprietary powers and rights
   (1) Nothing in subsection (a) of this section shall be construed to limit the authority of any State or political subdivision thereof or any interstate agency or other political agency of two or more States as the owner or operator of an airport served by any air carrier certificated by the Board to exercise its proprietary powers and rights.

2. 49 U.S.C. § 2210 provides, in relevant part:
   (a) Sponsorship
   As a condition precedent to approval of an airport development project contained in a project grant application submitted under this chapter, the Secretary shall receive assurances, in writing, satisfactory to the Secretary, that—
   (1) the airport to which the project relates will be available for public use on fair and reasonable terms and without unjust discrimination, including the requirement that (A) each air carrier using such airport (whether as a tenant, nontenant, or subtenant of another air carrier tenant) shall be subject to such nondiscriminatory and substantially comparable rates, fees, rentals, and other charges and such nondiscriminatory and substantially comparable rules, regulations, and conditions as are applicable to all such air carriers which make similar use of such airport and which utilize similar facilities, subject to reasonable classifications such as tenants or nontenants, and combined passenger and cargo flights or all cargo flights, and such classification or status as tenant shall not be unreasonably withheld by any airport provided an air carrier assumes obligations substantially similar to

those already imposed on tenant air carriers, and (B) each fixed-based operator at any airport shall be subject to the same rates, fees, rentals, and other charges as are uniformly applicable to all other fixed-based operators making the same or similar uses of such airport utilizing the same or similar facilities, and (C) each air carrier using such airport shall have the right to service itself or to use any fixed-base operator that is authorized by the airport or permitted by the airport to serve any air carrier at such airport;

3. 49 U.S.C. § 1349 provides, in relevant part:
   (a) No Federal funds, other than those expended under this chapter, shall be expended, other than for military purposes (whether or not in cooperation with State or other local governmental agencies), for the acquisition, establishment, construction, alteration, repair, maintenance, or operation of any landing area, or for the acquisition, establishment, construction, maintenance, or operation of air navigation facilities thereon, except upon written recommendation and certification by the Secretary of Transportation that such landing area or facility is reasonably necessary for use in air commerce or in the interests of national defense. Any interested person may apply to the Secretary of Transportation, under regulations prescribed by him, for such recommendation and certification with respect to any landing area or air navigation facility proposed to be established, constructed, altered, repaired, maintained, or operated by, or in the interests of, such person. There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended. For purposes of the preceding sentence, the providing of services at an airport by a single fixed-based operator shall not be construed as an exclusive right if it would be unreasonably costly, burdensome, or impractical for more than one fixed-based operator to provide such services, and if allowing more than one fixed-based operator to provide such services would require the reduction of space leased pursuant to an existing agreement between such single fixed-based operator and such airport.

find that Western could assert its preemption claim based on the Supremacy Clause. On the merits, however, it found that the Authority's perimeter rule was not preempted by section 1305.

### Discussion

■ In *Montauk-Caribbean*, we held that there are no implied private rights of action to enforce sections 1349(a) and 1305(a). 784 F.2d at 97–98. We are, of course, bound by that decision, fairly construed. The district court correctly recognized that our analysis in *Montauk-Caribbean* applies equally to a suit claiming an implied right of action to enforce section 2210(a).[4] See also *Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9, 14–16 (1st Cir.1987); *Arrow Airways, Inc. v. Dade County*, 749 F.2d 1489, 1490–91 (11th Cir.1985). We also held in *Montauk-Caribbean* that sections 1305(a) and 1349(a) cannot be enforced through section 1983. 784 F.2d at 98. That holding would require dismissal of Western's section 1983 claims with respect to sections 1305(a) and 1349(a) in this case. We need not decide, however, whether there is a persuasive basis for reaching a different conclusion with respect to section 2210(a), see *New York Airlines, Inc. v. Dukes County*, 623 F.Supp. 1435 at 1443–48 (D.Mass.1985), because Judge Cannella did not abuse his discretion in holding that Western did not press its section 1983 claims in the district court.

■ Despite the lack of a private right of action to enforce the statutes, the district court held that Western could bring a Supremacy Clause challenge to the perimeter rule by claiming that the rule is preempted by section 1305(a)(1). The Authority argues that the absence of a private right to enforce section 1305(a)(1) requires dismissal of Western's Supremacy Clause claim. The Authority argues that *Montauk-Caribbean* settles the issue because the preemption claim based directly on section 1305(a)(1) that the *Montauk-Caribbean* court refused to recognize implicitly relied on the Supremacy Clause. The Authority also argues that as a general matter, the Supremacy Clause by itself cannot create a right of action. Although we recognize the potential anomaly of rejecting a private right of action to enforce a statute while allowing a claim under the Supremacy Clause that the statute preempts a local regulation, we find that Western properly brought its Supremacy Clause claim.

As a preliminary matter, we note that whether the Supremacy Clause will support a suit claiming that section 1305(a)(1) preempts a local regulation was not ruled upon in *Montauk-Caribbean*. The plaintiff in that case made no claims directly under the Supremacy Clause.[5] Our holding that a private party has no implied right of action to enforce the substantive provisions of section 1305(a)(1) did not decide whether a private party can allege that a local regulation is preempted by section 1305(a)(1) on Supremacy Clause grounds.

A claim under the Supremacy Clause that a federal law preempts a state regulation is distinct from a claim for enforcement of that federal law. "The primary function of the Supremacy Clause is to define the relationship between state and federal law. It is essentially a power conferring provision, one that allocates authority between the national and state governments...." *White Mountain Apache Tribe v. Williams*, 810 F.2d 844, 848 (9th Cir.1987). A claim under the Supremacy Clause simply asserts that a federal statute has taken away local authority to regulate a certain activity. In contrast, an implied private right of action is a means of enforcing the substantive provisions of a federal law. It provides remedies, frequently in-

---

4.  Indeed, the district court decision in *Montauk-Caribbean*, which this court affirmed, concluded that section 2210(a) does not provide a private right of action. See *Montauk-Caribbean Airways, Inc. v. Hope*, No. 85–CV–420, slip op. at 10–11 (E.D.N.Y. Sept. 4, 1985), aff'd, 784 F.2d 91

(2d Cir.), cert. denied, —— U.S. ——, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986).

5.  Indeed, plaintiff's petition for rehearing conceded that its prior argument "may not have adequately emphasized ... the Supremacy Clause."

cluding damages, for violations of federal law by a government entity or by a private party. The mere coincidence that the federal law in question in this case contains its own preemption language does not affect this distinction.

For example, in *Rollins Environmental Services (FS), Inc. v. Parish of St. James,* 775 F.2d 627 (5th Cir.1985), plaintiff's Supremacy Clause claim was based on a provision of the Toxic Substance Control Act, 15 U.S.C. §§ 2601–2629, that, like section 1305(a)(1), explicitly preempts certain state regulation. See 15 U.S.C. § 2617. Even though the section of the Act providing private rights of action did not provide for suit for violation of the preemption section, see 15 U.S.C. § 2619, the court, relying on the Supremacy Clause, considered the effect of the preemption provision. See *Rollins,* 775 F.2d at 631, 632–37. Similarly, in *New York Airlines Inc. v. Dukes County,* 623 F.Supp. at 1441–43, 1450 n. 13, the court held that section 1305(a)(1) provides a basis for a Supremacy Clause challenge to an airport regulation, but that it does not provide a private right of action.

In arguing that the Supremacy Clause does not provide a cause of action, the Authority mistakenly relies on *White Mountain Apache Tribe v. Williams,* 798 F.2d 1205 (9th Cir.1986), cert. denied, —— U.S. ——, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987).[6] In that case, the court distinguished actions for an injunction based on the Supremacy Clause from private rights of action to enforce the Supremacy Clause under section 1983:

> The question whether the Supremacy Clause (U.S.Const. art. VI cl. 2) may be used as a sword in bringing a § 1983 action is, of course, different from that decided [in the affirmative] by the Supreme Court in [*White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980) ]—whether the Supremacy Clause may be invoked as a shield against the imposition of state taxes on ... opera-

tions heavily regulated by the federal government.

810 F.2d at 847. The court held that although the Supremacy Clause can be used to enjoin enforcement of a state statute that runs afoul of a federal legislative scheme, it does not provide a basis for a claim under section 1983. Thus, *White Mountain* highlights the distinction between a Supremacy Clause claim and other private rights of action. See also *Citizens for an Orderly Energy Policy, Inc. v. County of Suffolk,* 604 F.Supp. 1084, 1089–91 (S.D.N.Y.1985), aff'd, 813 F.2d 570 (2d Cir.1987) (per curiam). Indeed, many courts have considered Supremacy Clause challenges to local airport regulations without determining whether there was a private right of action from another source. See, e.g., *City of Burbank v. Lockheed Air Terminal, Inc.,* 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Pirolo v. City of Clearwater,* 711 F.2d 1006 (11th Cir.1983). Accordingly, the district court was correct in examining Western's Supremacy Clause claim.

■ Turning to the merits, we affirm on the basis of Judge Cannella's well-reasoned opinion, to which we refer the reader, holding that the Authority's perimeter rule is not preempted by section 1305. Although, as Judge Cannella recognized, the perimeter rule may be a regulation "relating to ... routes" within the meaning of section 1305(a)(1), we agree with his conclusion that the rule, at least when enacted by a multi-airport proprietor such as the Authority, falls within the proprietary powers of airport operators exempted from preemption by section 1305(b)(1). Cf. *City of Houston v. FAA,* 679 F.2d 1184, 1196 (5th Cir.1982).

Western's other contentions require little discussion. In its reply brief on appeal Western argues, apparently for the first time, that the FAA, by granting slots, has preempted any regulation of those slots by the Authority. The statute, however, authorizes the Authority to regulate those

**6.** The Ninth Circuit withdrew this version of its opinion and replaced it with an amended opinion, *White Mountain Apache Tribe v. Williams,*

810 F.2d 844 (9th Cir.1987). The portions of the Ninth Circuit's opinion relevant to this appeal, however, were substantially unchanged.

slots in accordance with its proprietary powers. Since the district judge did not err in finding that the perimeter rule is within those proprietary powers, Western's contention fails. Western's remaining claims, that it was improperly denied an opportunity to cross-examine the Authority's witness at trial and that it is entitled to a new trial because the district court made inadequate findings of fact and conclusions of law, are without merit.

Accordingly, the judgment of the district court is affirmed.