We granted rehearing en bane to consider several issues in this suit challenging a *1165 local government’s rights of way over federal lands in southern Utah. The Wilderness Society and other environmental groups (collectively “TWS”) brought this action challenging Kane County’s assertion of R.S. 2477 rights of way over federal lands managed by the Bureau of Land Management and the National Park Service. TWS sued under the Supremacy Clause of the U.S. Constitution, alleging that federal statutes, regulations, and agency management decisions preempted Kane County’s actions. The district court granted TWS’s motion for summary judgment, holding that Kane County must first establish the validity of its R.S. 2477 rights in a separate action and, until it did so, federal law preempted any ordinances and actions to assert those rights. The district court also enjoined Kane County from any action to open routes over federal lands to public use.
A divided panel affirmed the district court. See Wilderness Soc’y v. Kane County, 581 F.3d 1198 (10th Cir.2009). According to the panel: (1) TWS demonstrated constitutional and prudential standing; (2) the matter was not moot; (3) TWS had a cause of action under the Supremacy Clause; (4) the State of Utah and the United States were not necessary parties; and (5) the district court correctly decided the merits of the preemption claims. Id. at 1209-26.
We reverse because TWS lacks prudential standing to sue. The general prohibition against third-party standing applies to a Supremacy Clause challenge where TWS seeks to vindicate the property rights of the federal government, and no countervailing factors exist here which might permit standing.

Background

1. R.S. 2477 Rights of Way
This case is the latest stage in years of litigation over road rights on federal lands in southern Utah. Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004); Kane County v. United States, 597 F.3d 1129 (10th Cir.2010); Kane County v. Salazar, 562 F.3d 1077 (10th Cir.2009); San Juan County v. United States, 503 F.3d 1163 (10th Cir.2007) (en banc); Utah Shared Access Alliance v. Carpenter, 463 F.3d 1125 (10th Cir.2006); S. Utah Wilderness Alliance v. Bureau of Land Mgmt., 425 F.3d 735 (10th Cir.2005) (“SUWA ”); Sierra Club v. Lujan, 949 F.2d 362 (10th Cir. 1991); Sierra Club v. Hodel, 848 F.2d 1068 (10th Cir.1988). Like most of those cases, this one concerns the nature of Congress’s grant of a “right of way for the construction of highways over public lands, not reserved for public uses.” Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, repealed by Federal Land Policy and Management Act of 1976 (“FLPMA”), Pub.L. No. 94-579, § 706(a), 90 Stat. 2743. Known as “R.S. 2477,” this statute and the roads established under its authority “were an integral part of the congressional pro-development lands policy.” SUWA, 425 F.3d at 741.
The establishment of these rights of way “required no administrative formalities: no entry, no application, no license, no patent, and no deed on the federal side; no formal act of public acceptance on the part of the states or localities in whom the right was vested.” Id. Indeed, “R.S. 2477 was a standing offer of a free right of way over the public domain,” the acceptance of which occurred “without formal action by public authorities.” Id. (internal citations and quotation marks omitted). “All that is required” for title to pass “are acts on the part of the grantee sufficient to manifest an intent to accept the congressional offer.” Id. at 754; see also San Juan Coun *1166 ty, 503 F.3d at 1168 (“ ‘[A] right of way could be obtained without application to, or approval by, the federal government. Rather, the grant referred to in R.S. 2477 became effective upon the construction or establishing of highways, in accordance with the state laws.’ ” (quoting Hodel, 848 F.2d at 1078)). Although FLPMA repealed R.S. 2477 in 1976, it expressly preserved any existing rights-of-way. Pub.L. No. 94-579, § 701(a), 90 Stat. 2743, 2786 (“Nothing in this Act ... shall be construed as terminating any valid lease, permit, patent, right-of-way, or other land use right or authorization existing on the date of approval of this act.”); § 701(h), 90 Stat. 2743, 2786 (“All actions by the Secretary concerned under this Act shall be subject to valid existing rights.”).
2. Kane County’s Actions
The events relevant to this case began in March 2003, when Kane County requested that BLM remove its road signs closing certain routes in the Grand Staircase-Escalante National Monument. Aplt.App. 848-51. The BLM’s management plan for the Monument closed many routes to off-highway vehicles such as all-terrain vehicles, snowmobiles, and the like. See id. at 2856. The management plan depicted the open routes on a map labeled “Map 2,” but provided that “[a]ny route not shown on Map 2 is considered closed upon approval of this plan, subject to valid existing rights.” Id. at 1624, 1628. The plan contemplated the assertion of R.S. 2477 rights in the Monument:
If claims are determined to be valid R.S. 2477 highways, the Approved Plan will respect those as valid existing rights.... Nothing in this Plan alters in any way any legal rights the Counties of Garfield and Kane or the State of Utah has [sic] to assert and protect R.S. 2477 rights, and to challenge in Federal court or other appropriate venue any BLM
road closures that they believe are inconsistent with their rights.
Id. at 1624 & n. 1. The County’s March 2003 letter asserted that the BLM had wrongfully closed “county roads asserted as R.S. 2477 Rights-of-Way.” Id. at 848. The County proposed some temporary solutions, but the BLM would not remove the signs. Id. at 850, 853.
In August 2003, the County removed thirty-one BLM signs from alleged R.S. 2477 rights of way, returned the signs to BLM, and wrote BLM a letter detailing its actions. Id. at 853-54. In 2005, the County posted its own signs along routes in the Monument that the County understood to be county roads. Id. at 756-57, 921. The signs indicated that the routes were open to off-highway vehicle use despite the management plan. Id. at 1635-36. The County later removed “some” of these signs “pending consideration of the roads’ status and uses.” Id. at 929. In August 2005, the County adopted Ordinance No. 2005-03, which opened Class B and Class D county roads to off-highway vehicle use. Id. at 1755. The Ordinance invoked the County’s R.S. 2477 rights, but did not refer to any federal lands. Id. The County later admitted that the ordinance applied to rights of way crossing federal lands, specifically the Monument, the Moquith Mountain Wilderness Study Area, the Paria Canyon-Vermillion Cliffs Wilderness Area, and the Glen Canyon National Recreation Area. Id. at 1636-37, 2396, 2398. The County rescinded the ordinance in December 2006, after the start of this litigation. Id. at 836. At the same time, the County declared its intention to remove the off-highway vehicle use decals from all county roads. Id. at 836, 839. The County reported that it later removed all the decals. Id. at 917.
*1167 3. Procedural History
TWS filed this suit on October 13, 2005, alleging that the County’s ordinance, removal of BLM signs, and erection of County signs conflicted with federal statutes, regulations, and decisions and orders issued pursuant to those regulations. Id. at 18-20. TWS sought declarations that the ordinance and the County’s posting of signs on federal land were unconstitutional, and an injunction against similar actions in the future. Id. at 20-21.
Kane County moved to dismiss the suit in January 2006 under Rules 12(b)(1), (6) and (7). The County argued against the court’s jurisdiction on several grounds, including TWS’s lack of constitutional or prudential standing. Id. at 118-27. In particular, the County argued that TWS had no “standing to sue in lieu of the United States” and was not pursuing its “own legal rights,” but rather “seeking] to stand in for the United States.” Id. at 122. The district court denied the County’s motion in August 2006, finding that TWS had shown constitutional standing. Id. at 568. With respect to prudential standing, however, the court reasoned that “TWS need not show prudential standing” because it invoked the Supremacy Clause. Id. at 569-70. At the same time, the court granted TWS’s motion to amend its complaint. Id. at 570-71. The County then filed a motion to alter or amend its order under Rule 59(e), asking the court to reconcile, among other issues, two apparently conflicting statements in the court’s order: that the County “could defend the legality of the Ordinance by attempting to meet its burden to show that it has acquired R.S. 2477 rights on the land,” id. at 565, and that the “Court need not make any final determination regarding the existence of any R.S. 2477 right-of-way in order to grant TWS’s requested relief,” id. at 566. Denying the motion in a short order, the court said, “[T]he court’s Order needs no clarification.” Id. at 670.
Shortly after the court denied the County’s first motion to dismiss, the County rescinded Ordinance 2005-03. In May 2007, the County filed a second motion to dismiss under Rule 12(h)(3), arguing that its subsequent rescission of the ordinance mooted the case. Id. at 735-81. The court deemed the case not moot because some County road signs remained on federal land and the County failed to show that it would not re-enact the ordinance. Id. at 1575.
Eventually, both parties moved for summary judgment. Id. at 1578-1613, 2218-39. TWS’s motion requested a new remedy: it asked the court to enjoin the County from adopting ordinances or posting signs to open roads considered closed by federal law and management plans “unless and until Kane County proves in a court of law that it possesses a right-of-way to any such route.” Id. at 1580. The County admitted that no court had issued a final determination that it possessed R.S. 2477 rights of way over the roads. Id. at 1868-69. But it protested that TWS had never identified the specific roads at issue, creating genuine issues of material fact, and that the action was “functionally equivalent to an action to quiet title.” Id. at 1887-92. The County also sought partial summary judgment on its R.S. 2477 rights in two specific roads, Skutumpah and Windmill. Id. at 2218-39.
The district court granted TWS’s motion and denied the County’s. Id. at 2519-20. It declined to allow the County to establish the validity of its R.S. 2477 rights before deciding the merits. Id. at 2489. “First, the County has not filed a quiet title action in this case, and, second, even if it had done so, TWS is not the proper party to sue for quiet title.” Id. The court declared that the County’s signage and ordinance *1168 violated the Supremacy Clause and enjoined the County from similar actions “to invite or encourage vehicle use on any route or area closed to such use by governing federal land management plan or federal law.” Id. at 2519-20. The County appealed the district court’s denials of its motions to dismiss, the denial of its motion for partial summary judgment, and the grant of TWS’s motion for summary judgment. Id. at 2522-23.

Discussion

Aside from the merits of this action, Kane County raises three threshold questions: constitutional standing, prudential standing, and mootness. See Chihuahuan Grasslands Alliance v. Kempthorne, 545 F.3d 884, 891 (10th Cir.2008) (mootness); Keyes v. School Dist. No. 1, 119 F.3d 1437, 1445 (10th Cir.1997) (standing). Because TWS lacks prudential standing, we proceed directly to that issue without deciding whether TWS has constitutional standing or whether the case is moot. See Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584-85, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).[1]
1. Prudential Standing Doctrine
We review de novo the district court’s determinations regarding subject matter jurisdiction. Kane County, 562 F.3d at 1085 (10th Cir.2009); Sac & Fox Nation of Mo. v. Pierce, 213 F.3d 566, 571 (10th Cir.2000). For federal courts to have jurisdiction over an action, “the party bringing the suit must establish standing.” Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004); see also Utah Animal Rights Coal. v. Salt Lake County, 566 F.3d 1236, 1240 (10th Cir.2009). “For purposes of standing, we must assume the Plaintiffs’ claim has legal validity.” Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th Cir.2006) (en banc).
The Supreme Court’s “standing jurisprudence contains two strands: Article III standing, which enforces the Constitution’s case-or-controversy requirement, ... and prudential standing which embodies ‘judicially self-imposed limits on the exercise of federal jurisdiction.’ ” Newdow, 542 U.S. at 11, 124 S.Ct. 2301 (quoting Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). To have Article III standing, “[t]he plaintiff must show that the conduct of which he complains has caused him to suffer an ‘injury in fact’ that a favorable judgment will redress.” Id. at 12, 124 S.Ct. 2301. The prudential standing doctrine encompasses various limitations, including “the general prohibition on a litigant’s raising another person’s legal rights.” Allen, 468 U.S. at 751, 104 S.Ct. 3315. “[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.” Warth v. Seldin, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). “Without such limitations — closely related to [Article] III concerns but essentially matters of judicial self-governance — the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be *1169 unnecessary to protect individual rights.” Id. at 500, 95 S.Ct. 2197.
The question of prudential standing is often resolved by the nature and source of the claim. Id. “Essentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiffs position a right to judicial relief.” Id. In some situations, an implied right of action may exist. Id. at 501, 95 S.Ct. 2197. “Moreover, Congress may grant an express right of action to persons who otherwise would be barred by prudential standing rules.” Id.
The Supreme Court has held that a federal court has jurisdiction in a suit for “injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute, which by virtue of the Supremacy Clause of the Constitution, must prevail.” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Court has yet to weigh in, however, on whether the Supremacy Clause provides a cause of action. Neither do we need to do so today as a court sitting en banc. It is true that our prior panel decisions have concluded that when it comes to a Supremacy Clause challenge, it is not necessary to demonstrate that the preemptive federal statute creates a private right of action. Chamber of Commerce v. Edmondson, 594 F.3d 742, 756 n. 13 (10th Cir.2010); Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1266 (10th Cir.2004). In Chamber of Commerce, we reasoned that even if 42 U.S.C. § 1983 does not permit a preemption claim, the plaintiffs could proceed under the Supremacy Clause in claiming that various measures enacted by Oklahoma were preempted by federal immigration law. 594 F.3d at 756 n. 13. Nor does there appear to be any requirement that the preemptive federal statute create substantive rights in favor of a party arguing for preemption. Verizon Md., Inc. v. Pub. Serv. Comm’n of Md., 535 U.S. 635, 643-44, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); Indep. Living Ctr., 543 F.3d at 1059-62.
In Qwest, we relied upon Western Air Lines, Inc. v. Port Auth., 817 F.2d 222, 225 (2d Cir.1987), which distinguished between a Supremacy Clause challenge and a private right of action. The former involves a claim that the local authority lacks the power to regulate given the supremacy of federal law, while the latter seeks to enforce the “substantive provisions of a federal law.” Western Air Lines, Inc., 817 F.2d at 225-26. For purposes of today’s holding, we as an en banc court can simply assume without deciding that the Supremacy Clause provides a cause of action— whether one exists or not, the prudential standing doctrine still bars TWS’s claims.
2. The Prudential Standing Doctrine Applies
The district court held that prudential standing is not a concern whenever a plaintiff brings a “preemption-based challenge ... under the Supremacy Clause.” Aplt.App. 570. The panel opinion concluded that TWS had prudential standing, rejecting Kane County’s assertions that TWS was (1) asserting the claims of the United States, (2) raising generalized grievances, and (3) relying on claims outside the zone of interests protected by the Supremacy Clause. Wilderness Soc’y, 581 F.3d at 1216. According to the panel, TWS members are asserting independent harms to their recreational and aesthetic interests given Kane County’s attempt to override the Monument Plan and federal management plans. Id. at 1217. Because the members used lands “within earshot of the disputed roads for recreational purposes” their grievances are specific and *1170 not general. Id. at 1217. Finally, even assuming that the zone of interests test applies in a preemption challenge, the panel concluded that the Supremacy Clause need only arguably be designed to protect persons harmed by preempted enactments. Id. In a footnote, the panel suggested that the zone-of-interests test might not apply or be redundant of the third-party standing inquiry. Id. at 1217 n. 11.
Although Congress may relieve parties of meeting prudential standing requirements, the doctrine applies “unless it is expressly negated.” Bennett v. Spear, 520 U.S. 154, 163, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). To be sure, as the district court stated, some cases seem to hold that prudential standing is unnecessary in a Supremacy Clause challenge. See Phann. Research & Mfrs. of Am. v. Concannon, 249 F.3d 66, 73 (1st Cir.2001), aff'd on other grounds sub nom. Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 123 S.Ct. 1855, 155 L.Ed.2d 889 (2003); cf. St. Thomas-St. John Hotel & Tourism Ass’n v. Gov’t of the U.S. Virgin Islands, 218 F.3d 232, 241 (3d Cir.2000). These cases make the point that the preemptive federal statute need not confer a benefit on the plaintiffs, much as we concluded in Qwest, 380 F.3d at 1265. Concannon, 249 F.3d at 73; St. Thomas-St. John Hotel & Tourism Ass’n, 218 F.3d at 241. The district court also relied upon Taubman Realty Group Ltd. P’ship v. Mineta, which concluded that plaintiffs were not required to meet an additional standing requirement concerning the zone of interests regarding a Supremacy Clause challenge. 320 F.3d 475, 481 n. 3 (4th Cir.2003). These cases do not resolve another aspect of prudential standing, whether plaintiffs can assert the legal rights of others.
That it may still be an issue is demonstrated by Concannon, where PhRMA challenged a state statute essentially requiring manufacturers to enter rebate agreements with the State and was able to assert the rights of Medicaid recipients. 249 F.3d at 74. The court reasoned that vendors have historically been allowed to challenge restrictions on their operations by advocating the rights of those seeking their products. Id.
3. TWS Lacks Prudential Standing
TWS rests its claims on the federal government’s property rights. TWS does not assert a valid right to relief of its own. No provision — constitutional or statutory — expressly grants TWS a right to relief. TWS invokes the Supremacy Clause of the U.S. Constitution, FLPMA, 43 U.S.C. § 1712, the Wilderness Act, 16 U.S.C. §§ 1131-36, the National Park Service Organic Act, 16 U.S.C. § 1, and various regulations and agency decisions implementing the statutes. Aplt.App. 609-11. None of these provisions creates an express private cause of action.[2] See Alexander v. Sandoval, 532 U.S. 275, 286-87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). That leaves only the Supremacy Clause. See Edmondson, 594 F.3d at 756 n. 13; Qwest, 380 F.3d at 1266. Nonetheless, standing “often turns on the nature and source of the claim asserted.” Warth, 422 U.S. at 500, 95 *1171 S.Ct. 2197. In the context of prudential standing, “the source of the plaintiffs claim to relief assumes critical importance.” Id.
TWS argues that it is not suing based on the legal rights of a third party, the federal government’s property rights, but rather “is working to protect its conservation interests.” Aplee. Br. at 37. This is indistinguishable from TWS’s argument for constitutional standing: that the County’s actions affect organization members’ conservation interests. Id. at 31-32. But a party’s interest for the purposes of constitutional standing does not automatically confer prudential standing. Prudential standing imposes different demands than injury in fact. See, e.g., City of Los Angeles v. County of Kern, 581 F.3d 841, 848 (9th Cir.2009); MainStreet Org. of Realtors v. Calumet City, 505 F.3d 742, 745 (7th Cir.2007). A party may suffer a cognizable injury but still not possess a right to relief. For example, in Hackford v. Babbitt, the plaintiff alleged injury in the form of crop damage when the defendants diverted irrigation canals. 14 F.3d 1457, 1464 (10th Cir.1994). Although this court assumed that the plaintiff had met the constitutional requirements for standing, he lacked prudential standing because he had no right to manage the irrigation project. Id. at 1466.
Its protests notwithstanding, TWS obviously seeks to enforce the federal government’s property rights in the disputed rights of way. Its claims turn on the superiority of the federal government’s property claim. If the County possesses valid R.S. 2477 rights of way in the roads, then its actions do not necessarily conflict with the BLM’s management decisions. On the other hand, if the County does not possess rights of way in the roads, then the BLM’s final decisions trump and invalidate the County’s actions. This was the crux of TWS’s motion for summary judgment: “Kane County has not — and cannot — demonstrate as a matter of law that the County can flout federal management plans and open roads on federal public land without first proving that it possesses rights-of-way to the alleged routes.” Aplt.App. 1612. TWS seeks what it views as the enforcement of federal rights.
TWS has taken sides in what is essentially a property dispute between two landowners, only one of which is represented (Kane County). But TWS lacks any independent property rights of its own. In that light, Judge McConnell’s analogy is apt:
Imagine that my next-door neighbor, who keeps his property neat and tidy, is faced with a competing claimant to the land, who is likely to allow the property to fill with weeds. I might very much hope my neighbor wins. My property values and aesthetic interests could seriously be affected. I may be impatient with my neighbor’s inclination toward compromise and apparent disinclination to go to court. But no one would say I have standing to sue in defense of my neighbor’s property rights. The Wilderness Society is in precisely that situation.
Wilderness Soc’y, 581 F.3d at 1232 (McConnell, J., dissenting).
The Supreme Court’s reasons for the general rule against third-party standing counsel against TWS’s standing in this case. We “must hesitate before resolving a controversy ... on the basis of the rights of third persons not parties to the litigation” for two reasons. Singleton v. Wulff 428 U.S. 106, 113, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). “First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights ... do not wish to assert them....” Id. at 113-14, 96 S.Ct. *1172 2868. BLM’s absence from this case indicates that it does not wish to assert its rights against Kane County at this time or in this fashion. “Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them.” Id. at 114, 96 S.Ct. 2868. Although this court has disagreed whether the federal government may adequately represent conservation groups’ interests in R.S. 2477 quiet title cases, see Kane County, 597 F.3d at 1134 (summarizing San Juan County’s various opinions), surely the federal government is the best advocate of its own interests.
Sometimes a case may present “countervailing considerations” which “may outweigh the concerns underlying the usual reluctance to exert judicial power when the plaintiffs claim to relief rests on the legal rights of third parties.” Warth, 422 U.S. at 500-01, 95 S.Ct. 2197; see also Kowalski v. Tesmer, 543 U.S. 125, 129-30, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004). No such considerations are present here. First, the federal government’s property right is not “inextricably bound up with the activity the litigant wishes to pursue” like the cases in which the Supreme Court has recognized a doctor’s ability to assert his patient’s privacy rights because of their confidential relationship. Singleton, 428 U.S. at 114-15, 96 S.Ct. 2868 (citing Doe v. Bolton, 410 U.S. 179, 188-89, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973); Eisenstadt v. Baird, 405 U.S. 438, 445-46, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965)). Second, even where a close relationship exists between the litigant and the third party, “some genuine obstacle” to the third party asserting his own rights must exist. Id. at 116, 96 S.Ct. 2868. No apparent obstacles prevent the federal government from asserting its own rights against Kane County, as this court has already recognized. See Kane County, 597 F.3d at 1135. Thus, without any circumstances in favor of allowing TWS to assert the federal government’s legal rights, TWS lacks prudential standing.
4. The Dissent
The dissent suggests that the court’s analysis is the product of “extreme means” which misstates and misconstrues the positions of the parties and the district court to nullify the district court’s injunction. Yet it is the panel decision that represents a broad shift in our caselaw. See, e.g., Lindsay Houseal, Wilderness Society v. Kane County, Utah: A Welcome Change for the Tenth Circuit and Environmental Groups, 87 Denv. U.L.Rev. 725, 740-41 (2010) (suggesting that the panel decision represents a shift in favor of the federal government and environmental plaintiffs over the interests of local government). According to the dissent, the case is not about property rights, and it faults the court for concluding that the United States’ property rights can be destroyed outside a quiet title action contrary to Supreme Court precedent and creating a circuit split. The dissent contends that the claim advanced by TWS is merely one concerning the power to regulate and because Kane County did not prove its claims in a quiet title action, neither the district court nor we have any occasion to consider property rights. The dissent further contends that TWS has prudential standing because its members have been injured and that the United States is not the exclusive plaintiff in a Supremacy Clause challenge.
After acknowledging the possibility that “some or all of the R.S. 2477 rights-of-way claimed by Kane County are valid,” the dissent reaches the conclusion it does con *1173 cerning prudential standing because of its views about the merits of the property-interests in this case. See Dissent at 1180-81 (contending that the court’s opinion “elevates any claim to R.S. 2477 rights-of-way ... to a status superior to validly promulgated federal rules and regulations that manage public lands”); id. at 1181 (noting that “[b]y definition, off-road vehicles and all-terrain four wheelers are designed to be driven off roads and across all terrains,” and that “R.S. 2477 rights have been falsely claimed over dry creek beds, horse and hiking trails, and jagged rock outcroppings”); id. at 1180-81, 1185-86 (suggesting that the exclusive means to establishing R.S. 2477 rights is through a quiet title action); id. at 1192 n. 7 (discussing “the ubiquity and ostensible lack of merit to many R.S. 2477 claims”); id. at 1186-87 (concluding that even if Kane County established its R.S. 2477 rights, they still would be subject to federal regulation as easements). The dissent understandably is concerned with false R.S. 2477 claims as a basis for easements in federal land. At a minimum and fortunately as a matter of prudential standing, the dissent’s solution ought to receive the benefit of input by the real-party-in-interest (the United States) before being adopted in the context of a Supremacy Clause challenge. That solution allows a third-party (with no interest in the property) to force a quiet title action; absent participation and victory in that quiet title action, the R.S. 2477 claimant loses.[3] This is an anomaly given a legislative and administrative ordering scheme that expressly recognizes and defers to valid, existing R.S. 2477 rights. It also has implications for our cases and longstanding practice which has recognized R.S. 2477 rights and several other mechanisms for resolving such disputes. See Wilderness Soc’y, 581 F.3d at 1235-36 (McConnell, J., dissenting); SUWA, 425 F.3d at 741.
Contrary to the dissent’s claim, this court’s decision in no way holds that “the United States may be stripped of its property rights outside a QTA claim,” Dissent at 1186-87, nor does it conflict with cases construing or applying the QTA such as Block v. North Dakota, 461 U.S. 273, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983), Shawnee Trail Conservancy v. United States Dep’t of Agriculture, 222 F.3d 383 (7th Cir.2000), and Montanans for Multiple Use v. Barbouletos, 568 F.3d 225 (D.C.Cir. 2009). The decision recognizes that given the unique nature of the interest involved and TWS’s claims, the government must be heard. It also recognizes that we cannot dispense with “a real party in interest bringfing] a properly focused conflict to the attention of a court, with evidence to back it up.” Wilderness Soc’y, 581 F.3d at 1237 (McConnell, J., dissenting). If anything, the cases relied upon by the dissent plainly support the idea that TWS is not the proper plaintiff here. Block merely holds that the QTA is the exclusive means for an adverse claimant to challenge the government’s title. 461 U.S. at 286, 103 S.Ct. 1811. It does not, nor could it, purport to be the exclusive means of recognizing R.S. 2477 rights. It says nothing about a third-party forcing a QTA challenge by another with an interest in the property or disregarding the efforts of parties with an interest in the property to settle their differences.[4] Under the dissent’s approach, even if the government and Kane County agreed about the nature and extent of an R.S. 2477 easement or the *1174 scope of federal regulation, TWS would be a proper plaintiff to challenge any agreement under the Supremacy Clause. See Wilderness Soc’y, 581 F.3d at 1237 (McConnell, J., dissenting). This would turn the QTA on its head.[5]
In Shawnee Trail, the Seventh Circuit rejected the efforts of interest groups (like TWS) to challenge the regulatory authority of United States, notwithstanding that the groups made no claim to quiet title in themselves. 222 F.3d at 386. Montanans for Multiple Use involved plaintiffs who wanted ownership of roads and trails closed by the Forest Service. 568 F.3d at 228. Not surprisingly, the plaintiffs had to proceed under the QTA. Although the dissent maintains that Kane County must engage in a quiet title action, the decision on any remedy (assuming the government were aggrieved) belongs to the United States, and the parties are free, as they have, to engage in conciliation.
The dissent contends that TWS has prudential standing simply because its members have suffered alleged aesthetic or recreational injury and have a right to be heard on the supremacy of federal rules and regulations, but of course, prudential standing moves beyond injury in fact and addresses whether a plaintiff is asserting its own legal rights rather than resting on the rights or interests of third parties. See Warth, 422 U.S. at 499, 95 S.Ct. 2197. As discussed above, we conclude that TWS’s claim is derivative of that of the United States. We do not quarrel with the notion that there can be more than one plaintiff (and other than the federal government) in a Supremacy Clause challenge. But contrary to the dissent, we think that more than vindicating the federal government’s right to regulate is at issue here. That right is expressly conditioned on the recognition of existing local property rights and necessarily entails the discretion of the United States as a property owner.
We VACATE the district court’s summary judgment in favor of TWS and REMAND with instructions to dismiss the action.

. Even in a preemption challenge, a party must have constitutional standing which is jurisdictional. Indep. Living Ctr. of S. Cal. v. Shewry, 543 F.3d 1050, 1064 (9th Cir.2008). Although prudential standing is not a jurisdictional limitation and may be waived, here it has been raised. Id. at 1065 n. 17; Finstuen v. Crutcher, 496 F.3d 1139, 1147 (10th Cir. 2007).

. Ordinarily, a plaintiff claiming a violation of FLPMA would sue under the Administrative Procedures Act (“APA”), 5 U.S.C. §§ 701-06. See New Mexico ex rel. Richardson v. Bureau of Land Mgmt., 565 F.3d 683, 719 (10th Cir. 2009). But a suit brought under the APA seeks to compel a federal agency to follow the law, not to stand in the place of the federal agency to compel a state to follow the law. See 5 U.S.C. §§ 702, 706(2); Norton, 542 U.S. at 61-62, 124 S.Ct. 2373. Accordingly, TWS has sued under the Supremacy Clause, not the APA. See Aplee. Br. at 33 ("TWS does not challenge any action or inaction by the federal government....”).

. The Quiet Title Act has a twelve-year limitations period. 28 U.S.C. § 2409a(g).

. According to the dissent, Kane County brought this on itself by raising an affirmative defense of title to the TWS lawsuit. Dissent at 1190 n.6.

. The dissent tells us that "[i]f the United States did not claim an interest in the alleged R.S. 2477 rights, there would be no preempting federal rule upon which to base such a challenge.'' Dissent at 1185 n.5. The government will probably always claim some interest (given the nature of an easement or right of way), even more so under the dissent’s analysis where "subject to valid existing rights" means nothing, absent a quiet title action. See Wilderness Soc'y, 581 F.3d at 1236-37 (McConnell, J., dissenting).