24-1895-cv
*Delux Public Charter et al. v. County of Westchester*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of August, two thousand twenty-five.

PRESENT:
> **REENA RAGGI,**
> **SUSAN L. CARNEY,**
> **ALISON J. NATHAN,**
> *Circuit Judges.*

———————————————————————

**Delux Public Charter, LLC, DBA JSX Air, DBA JetSuiteX, Inc., XO Global, LLC, Blade Urban Air Mobility, Inc.,**

> *Plaintiffs-Counter-*
> *Defendants-Appellants,*

v.                                                          No. 24-1895-cv

**County of Westchester, New York, a charter county,**

*Defendant-Counter-Claimant-Appellee.*[*]

_____

**FOR PLAINTIFFS-APPELLANTS:**

JONATHAN F. COHN, Shannon Grammel, Lehotsky Keller Cohn LLP, Washington, DC; Jonathan B. Nelson, Dorf Nelson & Zauderer LLP, Rye, New York; Kyle D. Hawkins, Lehotsky Keller Cohn LLP, Austin, Texas.

**FOR DEFENDANT-APPELLEE:**

JOHN M. NONNA, Westchester County Attorney, Justin R. Adin, Asst. Chief Deputy County Attorney, White Plains, New York.

Appeal from the July 2, 2024 judgment of the United States District Court for the Southern District of New York (Halpern, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART AND REVERSED IN PART,** and the case is **REMANDED**.

_____

[*] The Clerk of Court is directed to amend the caption as set forth above.

2

Defendant-Appellee Westchester County is the owner and proprietor of the Westchester County Airport, a commercial and general aviation airport located in White Plains, New York. Plaintiffs-Appellants are federally authorized public charter operators and air carriers who provide public charter services to and from the Airport. As early as 2015, Plaintiffs began operating out of the Airport, providing air services to the public out of privately-run Fixed Base Operator areas (FBOs) instead of the Airport Terminal. In 2021, however, the County began requiring Plaintiffs to operate out of the Airport Terminal rather than the FBOs. It did so pursuant to Westchester County Municipal Code § 712.462, which is a codification of the County's Terminal Use Procedures (TUPs).[1] In particular, in 2021 the County sought to enforce a 2005 amendment to the municipal code requiring that "[a]ll Passenger Service provided at the Airport . . . be provided at the Terminal." Westchester Cnty. Mun. Code § 712.462(1).

Plaintiffs brought suit, alleging that the 2005 Amendment (1) is preempted by the Airport Noise and Capacity Act (ANCA), 49 U.S.C. § 47524(c)(1); (2) is

---

[1] The TUPs are a set of formal policies that have governed the allocation of the Terminal's ground facilities and flight slots since the 1980s and were first codified in 2004. *See* Westchester Cnty. Mun. Code § 712.462.

preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1); and (3) violates the Equal Protection Clause.

Plaintiffs now appeal from a judgment of the United States District Court for the Southern District of New York (Halpern, *J.*). The court granted Defendant's motion for summary judgment in part, dismissing all of Plaintiffs' claims. *Delux Pub. Charter, LLC v. Cnty. of Westchester*, No. 22-CV-01930 (PMH), 2024 WL 3252948, at *14 (S.D.N.Y. July 1, 2024).[2] On appeal, we assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision.

"We review a grant of summary judgment *de novo*." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). On *de novo* review, we now hold that the 2005 Amendment (1) is preempted by ANCA but (2) is not preempted by the ADA and (3) does not violate equal protection. Accordingly, we affirm in part and reverse in part the judgment below and remand for further proceedings consistent with this Order.

---

[2] The court also granted Plaintiffs' motion for summary judgment in part and dismissed each of Defendant's counterclaims. *Delux Pub. Charter*, 2024 WL 3252948 at *14.

## I.    The Airport Noise and Capacity Act

In 1990, Congress enacted ANCA to create a national "aviation noise management" policy. 49 U.S.C. § 47521(1), (3). As relevant here, ANCA provides that local noise or access restrictions on "stage 3 aircraft"—the type of aircraft that Plaintiffs operate—"may become effective only if" the restrictions have either been "agreed to by the airport proprietor and all aircraft operators" or "submitted to and approved by the Secretary of Transportation after an airport or aircraft operator's request for approval." *Id.* § 47524(c)(1). "Because these procedures are mandatory and comprehensive, . . . local laws not enacted in compliance with them . . . are federally preempted." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 151–52 (2d Cir. 2016).

In this appeal, all parties agree that the local access restriction at issue was not enacted in compliance with ANCA's procedural requirements. The 2005 Amendment, which requires all passenger service to be provided at the Airport Terminal, was neither agreed to by all aircraft operators nor approved by the Secretary of Transportation. But the County maintains that the 2005 Amendment nonetheless falls under ANCA's grandfather provision.

Under ANCA's grandfather provision, the Act's procedural requirements do not apply to any local airport noise or access regulations that were in effect on November 5, 1990. 49 U.S.C. § 47533(1). ANCA's requirements similarly do not apply to a "a subsequent amendment to an airport noise or access agreement or restriction in effect on November 5, 1990, that does not reduce or limit aircraft operations or affect aircraft safety." 49 U.S.C. § 47524(d)(4).

Accordingly, because the 2005 Amendment was not enacted in compliance with ANCA's procedural requirements, the principal issue on this appeal is whether the 2005 Amendment reduces or limits aircraft operations beyond what was in effect prior to the Amendment (*i.e.*, under the 2004 law).[3]

To answer that question, we begin with the relevant statutory text. Preemption is generally "a matter of statutory interpretation," which requires "ascertain[ing] the intent" of the legislature. *Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 495 (2d Cir. 2023) (quotation marks omitted). The "best evidence" of

---

[3] The 2004 law, of course, was not in effect in 1990. *See supra* note 1. Prior to enactment, however, the County submitted the proposed law for FAA review. The FAA responded that the proposed law did not need to go through the full approval process because it (1) amounted to a "subsequent amendment" to earlier versions of the pre-1990 TUPs and (2) "does not reduce or limit aircraft operation or affect safety," thus, satisfying the grandfathering requirements under ANCA. App'x at 378, 382–83. Neither party disputes the FAA's characterization of the 2004 law, *see Delux Pub. Charter*, 2024 WL 3252948 at *5. Accordingly, for the purposes of this appeal, we assume, without deciding, that the 2004 law was properly grandfathered under ANCA.

legislative intent is "the plain language of the statute," *Grajales v. Comm'r of Internal Revenue*, 47 F.4th 58, 62 (2d Cir. 2022) (citations and quotation marks omitted), although "legislative history" can also be considered to "help us decipher the meaning of the statutory language," *Cuthill v. Blinken*, 990 F.3d 272, 284 (2d Cir. 2021).

Looking to the language of the 2004 law and the 2005 Amendment, it is evident that the Amendment added a new requirement: that all Airlines serving the public provide their services "at the Terminal." Westchester Cnty. Mun. Code § 712.462(1).[4] Because this added requirement plainly "limit[s] aircraft operations" beyond the regulations stated in the 2004 law, 49 U.S.C. § 47524(d)(4), we conclude that the 2005 Amendment is not shielded by ANCA's grandfather clause.

The County takes a different view. It argues that the 2005 Amendment was merely a clarification of existing law rather than a new restriction. In support, the County primarily points to a County Board of Legislators report—issued before

---

[4] Among other changes, the 2005 Amendment also eliminated a provision from the 2004 law: that its requirements did "not apply to any activities by Airport users not providing passenger service or not using the Terminal building or Terminal Ramp." App'x at 320.

7

the 2005 Amendment was enacted—explaining that the 2004 law required an amendment. In particular, the report stated that the then-proposed 2005 Amendment would "clarify long-standing practice under which the County requires that all commercial passenger service providers, including those that offer their services on an infrequent basis, use the main Airport terminal and terminal ramp[.]" App'x at 339; *see also id.* at 338 (noting that the 2004 codification created "several unintended ambiguities" which the 2005 Amendment would "clarify"). The County thus argues that the 2005 Amendment did not "reduce or limit aircraft operations[.]" 49 U.S.C. § 47524(d)(4). We disagree.

As the County concedes, the 2005 Amendment included an express requirement that had never before been codified: that all passenger service at the Airport be "provided at the Terminal." Westchester Cnty. Mun. Code § 712.462(1). And, notwithstanding the purported "long-standing practice" of Terminal use by commercial airlines, App'x at 339, the County has not offered a single policy, procedure, or other written document indicating that public charters were required to use the Terminal prior to the 2005 Amendment. Moreover, the text of the 2004 law runs counter to the County's position. As written, the 2004 law exclusively imposed restrictions on entities that used the Terminal and its ramps,

8

and nothing in the law expressly restricted the use of non-Terminal spaces (such as FBOs). *See* App'x at 320 ("This Section does not apply to any activities by Airport users not providing passenger service or not using the Terminal building or Terminal Ramp."). To the extent another document governs Plaintiffs' use of FBOs or other non-Terminal spaces, the County has not provided it.

This is not to suggest that the County's position is unreasonable. First, given the absence of any discussion of FBOs in the 2004 law or related legislative history, it is plausible that FBOs were never intended to serve as alternative sites for passenger service. Second, considering the recent emergence of Plaintiffs' business model, it is also not surprising that the 2004 law did not expressly state that public charter operations were required to use the Terminal. But it does not follow from the record's silence that the 2005 Amendment merely clarified existing law rather than imposed new requirements. If anything, the lack of evidence suggesting that the County previously required public charters to use the Terminal undermines the County's position. After all, the very fact that the County codified the 2005 Amendment in order to "clarify the terms under which" public charters use the Airport, App'x at 339, suggests that this new law had *some* effect on aircraft operations beyond that imposed by the 2004 law.

9

Finally, although the County argues that the 2004 law was intended to govern the larger Airport, not just its Terminal, we are unpersuaded. In support, the County points to a 2004 letter from the Federal Aviation Administration, which used the term "Airport" rather than "Terminal" to describe certain aspects of the then-applicable procedures. But that letter also makes clear that the 2004 law codified access restrictions to the Airport "[T]erminal['s] space and gates," and the letter makes only passing references to the Airport's non-Terminal spaces. App'x at 383. The letter also confirmed that, in the FAA's view, "[i]f the County decides in the future to take an action that reduces or limits aircraft operations . . . it would have to comply with ANCA[.]" *Id.* at 382 n.8. And, of course, the letter cannot transform the text of the 2004 statute, which states that its restrictions apply only to entities "using the Terminal building or Terminal Ramp." App'x at 320.

On the record before us, we thus find that the 2005 Amendment had the effect of "reduc[ing] or limit[ing] aircraft operations," 49 U.S.C. § 47524(d)(4). Because the 2005 Amendment expressly added a requirement that all passenger service at the Airport be "provided at the Terminal," Westchester Cnty. Mun.

10

Code § 712.462(1), it is not a grandfathered amendment and is therefore federally preempted by ANCA.[5] *See Friends of the E. Hampton Airport*, 841 F.3d at 152.

## II. The Airline Deregulation Act

In 1978, Congress enacted the ADA to foster "efficiency, innovation, and low prices" throughout the nation's air transportation system. 49 U.S.C. § 40101(a)(12)–(13). The ADA has an express preemption provision, providing that states and localities "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under" the ADA. *Id.* § 41713(b)(1). Despite this broad language, the ADA also provides that its preemption provision "does not limit" states and localities that "own[] or operate[] an airport" from "carrying out [their] proprietary powers and rights." *Id.* § 41713(b)(3). This is known as the proprietor exception. *See Nat'l Helicopter Corp. of Am. v. City of New York*, 137 F.3d 81, 88 (2d Cir. 1998).

---

[5] Plaintiffs alternatively argue that the 2005 Amendment reduces or limits aircraft operations for an independent reason: it expanded the definition of "Airline" to expressly impose requirements on their class of carriers, Part 380 public charters, 14 C.F.R. § 380.2. *See* Appellants' Br. at 63–64. In light of our agreement with Plaintiffs' primary theory, however, we decline to consider this alternative ground for reversal.

When Congress included the proprietor exception in the ADA, it "consciously delegated to state and municipal proprietors the authority to adopt rational regulations with respect to the permissible level of noise created by aircraft using their airports in order to protect the local population." *Id.* The exception thus allows municipalities to "promulgate reasonable, nonarbitrary and non-discriminatory regulations of noise and other environmental concerns at the local level." *Id.* (quotation marks omitted). For example, we previously allowed LaGuardia Airport to implement a "perimeter rule"—prohibiting certain non-stop flights in excess of 1,500 miles—which it had adopted "to reduce ground congestion" and "to encourage the use of LaGuardia by business people, who often make relatively short trips[.]" *W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 817 F.2d 222, 223 (2d Cir. 1987); *see also W. Air Lines, Inc. v. Port Auth. of N.Y. & N.J.*, 658 F. Supp. 952, 957 (S.D.N.Y. 1986), *aff'd*, *id.* ("A proprietor's interest in regulating ground congestion at its airports [is] . . . at the core of the proprietor's function as airport manager[.]").

Here, we hold that the 2005 Amendment falls within ADA's proprietor exception. As the district court rightly found, the Amendment applies "equally to all 'Airlines' selling seats to the public" and there is nothing "unreasonable,

12

arbitrary, or discriminatory" about the law. *Delux Pub. Charter*, 2024 WL 3252948, at *8. And, as in *Western Airlines*, 817 F.2d at 223, the 2005 Amendment was adopted in part to control congestion of the Airport's tarmac and runways. *See* App'x at 314 (noting, in a 2004 Committee report, that the Amendment "balanc[es] the needs of Airport users against the need to protect the fragile ecosystem in which the Airport is located, as well as to preserve the quality of life for the residents who live and work in the vicinity of the Airport"). Accordingly, the 2005 Amendment is not preempted by the ADA.

## III. The Equal Protection Clause

Lastly, the district court rightly rejected Plaintiffs' equal protection claim. Plaintiffs, who brought this claim under 42 U.S.C. § 1983, proceed under a "class-of-one" theory. "A class-of-one claim exists where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quotation marks omitted). To succeed, a plaintiff must establish "an extremely high degree of similarity between itself and its comparators." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012); *see also Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018)

13

("[S]uch a plaintiff must be *prima facie* identical to the persons alleged to receive irrationally different treatment." (quotation marks omitted)).

"When a statute or regulatory regime imposes different classifications or regulatory burdens on groups of regulated participants, rational basis review contemplates a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *Id.* (quotation marks omitted). Ultimately, "a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993).

Here, the district court rejected Plaintiffs' equal protection claim because they (1) failed to "produce any evidence of an adequate comparator"; and (2) could not carry their burden to "negative every conceivable basis which might support" the rationality of the legislative classification. *Delux Pub. Charter*, 2024 WL 3252948, at *11 (quotation marks omitted). We agree. Although Plaintiffs propose several possible comparators, none have an "extremely high degree of similarity" to Plaintiffs. *Fortress Bible Church*, 694 F.3d at 222. And, even if there were a

14

suitable comparator, Plaintiffs fail to show that "there is no rational basis for the difference in treatment." *Kusel*, 626 F.3d at 140 (quotation marks omitted). As discussed above, reducing Airport congestion provides a legitimate, rational governmental purpose for the 2005 Amendment, and Plaintiffs have not "overcome the presumption of rationality that applies to government classifications." *Progressive Credit Union*, 889 F.3d at 49–50. Thus, the district court properly granted Defendant's motion for summary judgment as to this claim.

\* \* \*

Accordingly, the district court's judgment is **AFFIRMED in part and REVERSED in part, and the case is REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

15